**2007 WY 116**

**Ronald E. PINTHER, Appellant (Defendant),**

v.

**James D. DITZEL, Appellee (Plaintiff).**

No. 06–231.

Supreme Court of Wyoming.

July 27, 2007.

Representing Appellant: Donald Eugene Miller, of Graves, Miller & Kingston, PC, Cheyenne, Wyoming.

Representing Appellee: Terry Wynn Connolly, of Patton & Davison, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

 Mr. Ditzel wanted to pay off the loan and extinguish the mortgage on his property in Cheyenne, Wyoming, but he and Mr. Pinther, who held the note and mortgage, could not agree on the payoff amount. Mr. Ditzel filed a declaratory judgment action asking the district court to determine the payoff amount. The district court chose the lower amount urged by Mr. Ditzel. Mr. Pinther appealed, claiming that the district court improperly applied the tort of negligent misrepresentation to reduce the payoff amount. We agree, and so reverse the judgment and remand the case to the district court for recalculation of the payoff amount.

## ISSUE

 We find this issue to be dispositive: Did the district court properly apply the tort of negligent misrepresentation to reduce the payoff amount on the mortgage?

## STANDARD OF REVIEW

 [¶ 3] Following a bench trial, this Court reviews a district court's decision using a clearly erroneous standard for factual findings, but a *de novo* standard for conclusions of law. *Belden v. Thorkildsen,* 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo.2007). The issue in this case presents a question of law, so we do not defer to the district court's conclusion, and uphold it only if it is correct.

*Eklund v. Farmers Ins. Exch.*, 2004 WY 24, ¶ 10, 86 P.3d 259, 262 (Wyo.2004).

### FACTS

■ Clarence Rogers owned a house in Cheyenne, Wyoming, subject to a mortgage held by Countrywide Home Loans, Inc. In 2000, Mr. Rogers obtained a loan from Conseco Finance Servicing Corporation. This loan was secured by second and third mortgages on the property. Later, the house suffered damage from two separate fires. The insurance company issued two checks, totaling $65,323.50, to cover the damage. Both checks were jointly payable to the two mortgage holders, Countrywide and Conseco. The mortgage holders agreed on a division of the insurance proceeds, though the record does not provide details of their agreement. A short time later, Countrywide released its mortgage on the property. Conseco continued holding the two remaining mortgages, but after Conseco declared bankruptcy, the mortgages were transferred to Green Tree Servicing LLC.

■ In 2003, following Mr. Rogers death, the mortgages went into default. About a year later, Mr. Pinther purchased the mortgages from Green Tree. Mr. Pinther then initiated foreclosure proceedings. He published notice stating that the payoff amounts were $37,609.73 on the senior mortgage and $21,706.64 on the junior mortgage.

■ Mr. Ditzel saw the notice, decided to bid on the property, and attended the foreclosure sale in July 2004. Before the sale began, however, Mr. Pinther cancelled the sale on the senior mortgage, apparently on the advice of his attorney. The specific reason for the cancellation does not appear in the record. The foreclosure sale proceeded on the junior mortgage alone. Both Mr. Pinther and Mr. Ditzel bid at the sale, with Mr. Pinther making the successful bid of $25,000.00, an amount in excess of the payoff amount on the junior mortgage.

[¶ 7] Mr. Ditzel remained interested in the property. He managed to track down the only heir of Mr. Rogers, a niece in California. After acquiring her interest in the property for approximately $4,000.00, he redeemed the junior mortgage. At that point, Mr. Ditzel sought to pay off the remaining loan and extinguish the senior mortgage, but he and Mr. Pinther disagreed on the payoff amount. They could not fully account for how Countrywide and Conseco had divided the insurance payments after the fires. There was also confusion about the disposition of the excess Mr. Pinther had paid at the foreclosure sale of the junior mortgage.[1] In December 2004, Mr. Ditzel filed a complaint in the district court seeking a declaratory judgment establishing the payoff amount on the senior mortgage. Mr. Pinther filed an answer and counterclaim, seeking to foreclose on the mortgage and, in effect, also asking the court to establish the payoff amount.

■ The issue that became the subject of this appeal was raised by Mr. Ditzel for the first time in his pretrial memorandum. The published foreclosure notice stated that the payoff amount on the senior mortgage was $37,609.73. Mr. Ditzel contended that Mr. Pinther was bound by that amount, even if it proved to be incorrect, and even though the foreclosure sale had been cancelled. In contrast, Mr. Pinther relied on the mortgage agreement, which allowed him to include certain filing fees, insurance premiums, attorney's fees, and taxes that he had mistakenly failed to include in the published payoff amount. Including these items, the payoff amount on the senior mortgage increased to $57,675.93 as of the foreclosure sale date. Mr. Pinther asserted that, because the foreclosure sale on the senior mortgage had been cancelled, he was not obligated to accept as the payoff amount the mistaken figure published in the foreclosure notice. The district court accepted Mr. Ditzel's argument, and ruled that the payoff amount, as of the foreclosure sale date, was the lower figure of $37,609.73. Mr. Pinther appealed.

---

1. On appeal, the parties do not challenge the district court's application of the insurance proceeds or the overpayment on the junior mortgage. These issues are mentioned to explain the original bases of the parties' disagreement.

## DISCUSSION

[¶ 9] To determine the payoff amount, the district court began by interpreting the promissory note and mortgage, which constituted the written agreement between the parties. Mr. Ditzel was not the original borrower, and Mr. Pinther was not the original lender. In this appeal, however, there is no dispute that they succeeded to the rights and obligations of their predecessors, and were subject to the terms of the original promissory note and mortgage.

[¶ 10] In its decision letter, the district court observed that the terms of the mortgage may entitle Mr. Pinther to include filing fees, insurance premiums, attorney's fees, and taxes in the payoff amount, which would increase the payoff amount to $57,675.93. However, relying on the *Restatement (Second) of Torts* § 552(1) (1977) and cases discussing the tort claim of negligent misrepresentation, the district court concluded that Mr. Pinther was required to accept the published payoff amount of $37,609.73, regardless of the terms of the mortgage. In effect, the district court used the tort of negligent misrepresentation as the basis for varying the terms of the mortgage agreement.

[¶ 11] Negligent misrepresentation is a tort claim. *See Duffy v. Brown*, 708 P.2d 433, 437 (Wyo.1985) (referring to the *Restatement (Second) of Torts* § 552 (1977) for the elements of negligent misrepresentation). However, Mr. Ditzel did not assert negligent misrepresentation as a tort claim. As he recites in his brief, "the 'negligent misrepresentation' issue was not a separate cause of action, but only a method for the [district c]ourt to determine the amount necessary to pay the note and release the mortgage."

[¶ 12] We have previously indicated that tort theories may not be used to change the terms of a written agreement. Where the parties have a contractual agreement, "the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." *Snyder v. Lovercheck*, 992 P.2d 1079, 1087 (Wyo.1999); *see also Lee v. LPP Mortgage Ltd.*, 2003 WY 92, ¶ 27, 74 P.3d 152, 162 (Wyo.2003) ("[W]e have

been rightfully hesitant to find tort causes of actions where a contract exists."). *Snyder* involved a real estate purchaser's negligent misrepresentation claim against the seller, and *Lee* dealt with a guarantor's negligent nondisclosure claim against the lender, so they are not precisely applicable here. However, they clearly point toward the conclusion that a negligent misrepresentation tort claim cannot be used to circumvent the terms of a written agreement.

[¶ 13] Mr. Ditzel has not referred us to any precedent, from Wyoming or any other jurisdiction, supporting his argument that the tort of negligent misrepresentation may serve to alter the terms of a written agreement. The cases cited in the district court's decision letter are not applicable. For example, in *Richey v. Patrick*, 904 P.2d 798 (Wyo. 1995), *Verschoor v. Mountain West Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293 (Wyo. 1995), and *Husman v. Triton Coal Co.*, 809 P.2d 796 (Wyo.1991), the question in each was a party's ability to maintain a separate cause of action for negligent misrepresentation. Nothing in those decisions suggests that the tort of negligent misrepresentation can be used to vary the terms of a contract. The district court cited one case, *City of East Orange v. Kynor*, 383 N.J.Super. 639, 893 A.2d 46 (2006), to indicate that a foreclosing party has a duty to exercise due care in representing the amount due. However, that decision rested on constitutional due process grounds. The municipality had foreclosed on a tax lien. If the municipality misrepresented the amount of taxes legally due, the court said, that could violate its duty to provide interested parties with notice and opportunity to be heard. The legal reasoning of this decision does not apply to a private party foreclosing on a mortgage.

[¶ 14] *East Orange* is also distinguishable on one significant fact: the municipality actually conducted the foreclosure sale, while Mr. Pinther did not. Wyoming precedent suggests that, if the foreclosure sale had taken place, Mr. Pinther might have been bound to accept the lower payoff amount. *See McNeill Family Trust v. Centura Bank*, 2003 WY 2, 60 P.3d 1277 (Wyo.2003) (Mortgagee could not have foreclosure sale set

aside based on its own unilateral mistakes.). *But compare Peterson v. Johnson,* 46 Wyo. 473, 28 P.2d 487 (1934) (Foreclosure sale set aside because of mortgagee's "gross over-statement" of the payoff amount.). However, Mr. Pinther cancelled the foreclosure sale on the senior mortgage. Absent a completed foreclosure sale, we find no source for any duty that Mr. Pinther owed to Mr. Ditzel in representing the payoff amount on the senior mortgage. Accordingly, we find no foundation for the conclusion that the tort of negligent misrepresentation justifies a departure from the terms of the mortgage agreement.

### CONCLUSION

[¶ 15] The district court erred when it used the tort of negligent misrepresentation to vary the terms of a written agreement. The payoff amount should have been calculated in accordance with the parties' written agreement. We reverse the judgment, and remand to the district court to recalculate the payoff amount and enter judgment accordingly.