2008 WY 96

**R.C.R., INC., a Wyoming Corporation, and Jon R. Gray, Appellants (Defendants),**

v.

**Robert E. DELINE and Annabelle M. Deline, Appellees (Plaintiffs).**

No. S–07–0029.

Supreme Court of Wyoming.

Aug. 15, 2008.

Representing Appellants: Steven F. Freudenthal of Freudenthal Salzburg & Bonds, P.C., Cheyenne, Wyoming.

Representing Appellees: J. Kent Rutledge of Lathrop & Rutledge, P.C., Cheyenne, Wyoming; and Frederick B. Skillern of Montgomery Little Soran & Murray, P.C., Denver, Colorado. Argument by Mr. Skillern.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1] Appellants, R.C.R., Inc., and Jon R. Gray (hereafter Gray), assert that the district court erred: (1) In finding that the Appellees, Robert and Annabelle Deline (Delines), were not violating the terms of a 1979 easement they had across Gray's lands; (2) in concluding that an Affidavit Affecting Title filed by Gray in the Carbon County Clerk's Office was void and had no affect on the Delines' property interests; and (3) in enjoining Gray from posting signs along the disputed easement to the effect that the Delines' use of the easement was very limited, as well as enjoining Gray from frustrating the Delines' use of the easement by the locking of easement gates. We will affirm.

## ISSUES

[¶ 2] Gray states these issues:

A. Whether principles against splitting causes of action, of judicial estoppel, of collateral estoppel and of res judicata, as applied to the facts contained in the pleadings, evidence, findings, conclusions and rulings in the easement litigation and the private road litigation[,] bar the Delines' claims?

B. Whether the district court erroneously applied *Lozier v. Blattland Investments, LLC,* 2004 WY 132, 100 P.3d 380 (Wyo. 2004), without regard to the factual differences in that the Delines do not own the Rainbow Canyon Fishing Club property and no common source of title for the lands at issue, or the applicable rules against splitting causes of action, of judicial estoppel, of collateral estoppel and of res judicata?

C. Whether controlling legal principles prohibit the unilateral expansion of the *size* of the dominant estate to be served by the 1979 Hill easement? [Emphasis in original.]

The Delines did not do a formal statement of the issues, but we glean this from the summary of their arguments:

A. The claims of the [Delines] are not barred by res judicata or collateral estoppel because no issue of interpretation of the 1979 easement was raised until after RCR I and RCR II were litigated.

B. The trial court properly interpreted the 1979 easement to give effect to the intent of the parties according to the principles of easement interpretation found in *Lozier v. Blattland Investments.*

C. The Delines and their predecessors in title have not used the Hill easement to serve other "non-dominant" properties, but rather have only enjoyed their right as owners of Lot 5 to use the lands of Rainbow Canyon, Inc., for recreational purposes.

1. The Delines have not added to the dominant estate because they do not own the adjacent parcels that are allegedly being added.

2. RCR's interpretation of the 1979 easement is overly formalistic because the Delines own an independent private road easement over the RCR property to access Lot 3.

3. RCR's interpretation of the 1979 easement increases the burden on the servient estate and the Delines' interpretation decreases the burden.

4. Gray and RCR should be estopped from arguing the dominant estate has been expanded because of their knowledge that Hill was using the estate to fish in the Encampment River.

5. The trial court's ruling best gives effect to the intent of the parties concerning the reasonable use of the dominant estate.

In his reply brief, Gray perceives the Delines to have raised these additional issues:

A. Despite the trial court in the easement litigation having rejected any access rights for the fishing club or its members based on prescriptive use for failure to overcome the presumption of permissive use, Hill's prior ownership of Rainbow Canyon stock conferred access rights on the Delines upon purchase of the Hill lot to the Delines' riverside lot, the 118–acre fishing club and the 40% addition to the Hill lot.

B. [The Delines'] suggested application of *Lozier v. Blattland Investments, LLC,* 100 P.3d 380 (Wyo.2004) will require each and every owner of a servient estate to litigate each easement to determine what properties constitute the dominant estate.

## FACTS AND PROCEEDINGS

[¶ 3] This case has become quite complicated because of its long history, because of the many parties involved in it and the historical roles played by those parties' predecessors in interest and successors in interest, and because of the two prior trips it has had to this Court in order to settle other aspects of this bitterly disputed case (not to mention other pending cases and issues). At the outset, it is useful to know that Rainbow Valley, Inc., is a Fishing Club and the Delines are members of that Club. The Club is a corporation and each member of the Club held stock in it. However, the Fishing Club itself has not been a party in most of this litigation. In addition to the Delines, there were three other members when the Club was founded. However, as is revealed more fully below, one of those members (Mr. Hill) lost his interest in the Club in an unrelated legal proceeding. That interest was acquired by Gray, albeit indirectly. See *Hill v. Value Recovery Group, L.P.,* 964 P.2d 1256 (Wyo. 1998) (James C. Hill, who figures prominently in this case, is the "Hill" in that case, and Gray was a principal in Value Recovery Group, L.P.).

[¶ 4] In the case *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 584–86 (Wyo. 1999) (hereafter *RCR I*), we decided this much about the correlative rights of the parties before us in this appeal:

In 1959, Rainbow Canyon, Inc. (Rainbow Canyon) purchased land adjacent to the Encampment River in Carbon County, Wyoming. Rainbow Canyon was incorporated by George B. Kelley, Stephen G. Burg, Edwin F. Deline, and Walter W. Deline as a fishing club, and each held one share in the corporation. Each shareholder also received a one-half acre lot on the Rainbow Canyon property. The individual plaintiffs in this case are the successors in interest to the original Rainbow Canyon shareholders. ( [FN1]).

The property was originally accessed by a Bureau of Land Management (BLM) road, which required fording the Encampment River from the west to the east side of the river. In 1960, Walter Deline asked Kermit Platt, who owned land adjoining the Rainbow Canyon property to the south, about purchasing a parcel of his land on the east side of the river so the property could be accessed from the county road. Mr. Platt did not wish to sell; however, he agreed to an access road across his land and suggested a contractor to blade a road through the sagebrush. No other individual directly sought permission to cross Mr. Platt's property at that time, but each of the original owners, and their successors in interest, used the road.

In 1969, the Hills [James C. Hill and his wife] purchased an interest in Rainbow Canyon. Around 1976, they decided to build a home. The bank, which financed a portion of the Hills' construction costs, required a valid, recorded access easement to the Hills' property. On February 20, 1979, in a document entitled "Easements," Mr. and Mrs. Platt granted the Hills an easement for ingress and egress from the county road to the Hills' property across the Platts' property. The document was properly executed and recorded.

The document provides, in pertinent part:

FOR AND IN CONSIDERATION OF THE SUM OF Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Kermit C. Platt and Barbara P. Platt, husband and wife, hereinafter called the Grantor (whether one or more), hereby grants unto James C. Hill

and Sandra L. Hill, husband and wife, P.O. Box 6, Encampment, Wyoming, their heirs and assigns, hereinafter called Grantee (whether one or more), * * *

* * * a perpetual right of way and easement to maintain, inspect, operate and travel upon an access road from the existing county road to the Grantees' tract of land situate in the SE 1/4SE 1/4 of Section 9, Township 15 North, Range 83 West of the 6th P. M., over, across and upon the lands owned by the Grantor in the E 1/2 of Section 16, Township 15 North, Range 83 West of the 6th P. M., together with the right of ingress and egress to and from said land for any and all purposes necessary and incident to the exercise by the Grantee of the rights granted by this easement and right of way.

Grantor shall have the right to use and enjoy the above described premises and the Grantee shall not interfere with the Grantors' use and occupancy of said land and shall not build, create or permit any obstructions or excavations or ditches which would interfere with the safety or grazing of livestock; provided, however, Grantor shall not exercise such use and enjoyment in a manner that will impair or interfere with the exercise by Grantee of any of the rights herein granted.

The terms, conditions and provisions of this agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors, assigns and legal representatives. All rights herein granted may be released or assigned in whole or in part.

In 1990, Jon R. and Martha K. Gray purchased the northern 90 acres of the Platt's property, and, in 1992, they acquired the remaining 230 acres of the parcel. The warranty deeds included language indicating that the deeds were subject to all easements, reservations, restrictions, and rights-of-way of record or apparent on the grounds. The recorded Hill easement was thus excepted from the deeds, and the title insurance policy also excepted the Hill easement. Title to the entire parcel was eventually transferred to R.C.R., Inc., a corporation owned by the Grays. R.C.R., Inc. subsequently sold the southern 230 acres to Alex J. Horst.

In 1993, Mr. Gray wrote the Rainbow Canyon shareholders a letter, proposing to give them a written easement for either: 1) a conveyance of some Rainbow Canyon land to him and cross-fishing rights, or 2) an equal share of ownership in Rainbow Canyon, Inc. and certain amendments to its bylaws. On June 11, 1994, R.C.R., Inc. and Mr. Horst granted Rainbow Canyon an easement across a portion of the Gray and Horst lands. That easement did not follow the route of the existing access road and, by its own terms, has now expired. In the fall of 1994, Mr. Gray sent the shareholders an invoice for trespassing fees in the amount of $4,800 for six months.

Rainbow Canyon, Inc. and its shareholders brought a quiet title action, alleging, under various theories, their rights to access across the property owned by the defendants, R.C.R., Inc. and Mr. Horst. The defendants counterclaimed, also seeking to have their title quieted. The trial court granted a partial summary judgment, concluding that the Hills have a valid, appurtenant easement across the defendants' property, but leaving for trial the issue of the precise location of the easement. A two and one-half day bench trial was held June 5 through June 7, 1996. On January 17, 1997, the trial court entered its Judgment, quieting title in R.C.R., Inc. and Mr. Horst, subject to the Hill easement. The court reiterated its previous ruling that the Hill easement is valid, and set the exact location of the easement. The court determined that the other plaintiffs took nothing in the action; they have not appealed.

On January 31, 1997, R.C.R., Inc. and Mr. Horst filed a Motion to Alter or Amend Judgment pursuant to W.R.C.P. 59(e). They noted that the trial exhibit attached to the court's judgment and delineating the fixed location of the Hill easement as "the purple road" (Exhibit 33) was

unclear in that it appeared to include splinter routes accessing the Palmer and Deline lots on the Rainbow Canyon property. In addition, it was not possible to ascertain the location of the easement on the black and white copy provided to counsel. The defendants also argued that the easement was intentionally drafted as a permanently floating servitude, and the court should not have fixed the location.

On February 26, 1997, the Hills filed their Motion to Alter or Amend Judgment based on a clerical mistake in the judgment, pursuant to W.R.C.P. 60(a). The Hills pointed out that Exhibit 33 did not depict the southern part of Mr. Horst's property or the county road, and thus the Judgment did not locate the entire Hill easement which, by its terms, provides access from the county road to the Hill property. The Hills offered a substitute map, Exhibit A, which included the county road and all of Mr. Horst's property.

The court held a hearing on the parties' motions to alter or amend. As of May 30, 1997, no decision had been rendered on the outstanding motions, and R.C.R., Inc. and Mr. Horst filed a Notice of Appeal from the Judgment, which was docketed in this court as No. 97–225.

On June 4, 1997, the trial court entered its Amended Judgment, granting the Hills' motion, and granting the R.C.R., Inc./ Horst motion in part. Specifically, the judgment was altered to substitute Exhibit A as the attachment which shows the location of the Hill easement. The court delineated the easement with Xs, and clarified that the easement accessed only the Hills' lot. Finally, the court ordered the parties to share the cost of a metes and bounds survey of the fixed location of the Hill easement. On June 30, 1997, R.C.R., Inc. and Mr. Horst filed a Notice of Appeal from the Amended Judgment, which was docketed in this court as No. 97–226.

Docket Nos. 97–225 and 97–226 were consolidated on appeal. We subsequently granted Mr. Horst's motion to dismiss him as an appellant.

(FN1.) The Kirk Company acquired Mr. Kelley's interest; the Palmers acquired Mr. Burg's interest; Robert and Annabelle Deline acquired Edwin Deline's interest; and the Hills acquired Walter Deline's interest.

[Other footnotes omitted.]

[¶ 5] We went on to approve, as well, the district court's amendment of its original judgment, which dealt with what we will hereafter call the "Hill Easement:"

### Location of Hill Easement

Having determined that the Hill easement is a valid, appurtenant easement, we turn to the matter of its location. The trial court, applying the principles set out in *Edgcomb v. Lower Valley Power and Light, Inc.*, 922 P.2d 850 (Wyo.1996), determined that the easement was a floating easement which had been located by historic use. R.C.R., Inc. contends the Hills' easement is a permanently floating servitude and, therefore, the court erred when it fixed the location of the easement. Their position is that *Edgcomb* is factually different from, and should not control the outcome of, the case at bar. In the alternative, R.C.R., Inc. argues that the servient estate should be allowed to fix the permanent location in the first instance.

The "Easements" document does not specify the location of the easement. An express easement which does not state the location of the easement is called a floating easement. *Edgcomb*, 922 P.2d at 855; Bruce & Ely, *supra*, ¶ 7.02[2]. Floating easements, because they are not limited to any specific area on the servient tenement, burden the entire servient estate. Bruce & Ely, *supra*, ¶ 7.02[3]. Although R.C.R., Inc. uses the term "permanently floating servitude," they do not argue that the Hill easement should remain indefinite and unfixed in its location. Their argument is that the "Easements" document reserves a right in the servient estate to locate and relocate the easement periodically.

In support of its position, R.C.R., Inc. directs our attention to the following language in the granting instrument:

Grantor shall have the right to use and enjoy the above described premises

and the Grantee shall not interfere with the Grantors' use and occupancy of said land and shall not build, create or permit any obstructions or excavations or ditches which would interfere with the safety or grazing of livestock[.]

They believe that the above language, along with the use of the term "an" access road as opposed to "the" access road, demonstrates the parties' intent that the easement not be permanently located but, instead, subject to periodic relocation by the servient estate. While the above language limits the Hills' use of the easement so as not to interfere with the Grantors' use and occupancy, we do not find that language susceptible to the broad interpretation assigned by R.C.R., Inc. The instrument does not reserve to the servient estate either the right to locate the easement in the first instance, or the right to unilaterally relocate the easement.

Once a court concludes that the location or the dimensions of an easement are not adequately described in the instrument, it generally examines the surrounding circumstances to determine the intent of the parties. *Edgcomb*, 922 P.2d at 855 (quoting Bruce & Ely, *supra*, ¶ 7.02[2][b] ). The parties are presumed to have intended an easement that is reasonably convenient or necessary under the circumstances. *Id.* Courts look to various factors to establish a reasonable description of the easement, including the purpose of the easement, the geographic relationship between the dominant and servient estates, and the benefit to the easement holder compared to the burden on the servient estate holder. *Id.* "Use existing at the time the easement was created is considered strong evidence of the intended location and dimensions of the easement. * * * Use commenced after the execution of the easement to which the servient estate owner acquiesces is also persuasive." Bruce & Ely, *supra*, ¶ 7.02[2][b]. The court must be careful to determine the location of the easement on the basis of circumstances at the time the easement was created. *Id.*

The trial court, relying on this court's decision in *Edgcomb*, determined that the location of the Hill easement was fixed by historic use. *Edgcomb* involved a floating easement for a power transmission line. Applying the principles set out in the preceding paragraph, this court held that the parties' intent, evidenced by the granting instrument, was that the easement would become definitely located once the line was constructed. 922 P.2d at 855–56. The court determined the easement was defined by the current location of the transmission line. *Id.* at 855.

R.C.R., Inc. believes the case at bar is distinguishable from *Edgcomb* because multiple routes have been used over the years to access the Rainbow Canyon property. However, at the time the Hill easement was granted in 1979, only one road traversed the Platt property, the road that was constructed around 1960 to provide Mr. Deline access to his land in Rainbow Canyon. That road was referred to as the "orange road" throughout the proceedings. When Mr. Platt was asked, during his deposition, whether he gave Mr. Hill permission to use a particular road in the written easement, he responded, "There was no particular road, because there was only one road." Mr. Platt's testimony is strong evidence that the parties intended the easement to be located on the one and only access road in existence at the time the easement was granted—the orange road.

R.C.R., Inc. argues that the servient estate should designate the location of the easement in the first instance. A number of courts hold, where the location of an easement has not been defined, that the servient estate should designate the location of the easement in the first instance. 4 Richard R. Powell & Patrick J. Rohan, *Powell on Real Property* § 34.12[2] n. 19 and cases cited therein; Bruce & Ely, *supra*, ¶ 7.02[2][a]. However, as discussed above, the intent of the parties in this case is that the easement was defined by the access road in existence at the time the easement was created. In any event, Mr. Platt, the Grantor and original servient estate holder, was involved in the construction of the original access road.

Sometime in the early to mid–1980s, Mr. Platt relocated a portion of the road, which had often drifted shut in the winter, to the top of a hill where the wind could sweep it bare. The new route, referred to as the "purple road," overlapped the orange road to a significant degree, retained the original termini, and was agreeable to the Hills. The Hills accessed their property via the purple road from the time it was built until 1995, when Mr. Gray unilaterally relocated a portion of the road. The relocated segment, designated as the "pink road," entered the Rainbow Canyon property at a different location than the purple road, and required the Hills to enter their property from their back yard. The trial court, in its original Judgment, disregarded the pink road and fixed the purple road as the permanent location of the easement.

The fact that the permanent location designated by the court, the purple road, deviated slightly from the original route, is inconsequential considering that both parties were in agreement with the move. "An easement holder and the servient estate owner may relocate the easement by mutual consent." *Ericsson v. Braukman,* 111 Or.App. 57, 824 P.2d 1174, 1177 (1992) (quoting Bruce & Ely, *supra,* ¶ 7.03[1][c] ). In addition, the court properly disregarded Mr. Gray's unilateral relocation of the road. The general rule, which we adopt here, is that unilateral relocation of an easement is not permitted, absent an express provision in the granting instrument. Bruce & Ely, *supra,* ¶ 7.05[1]. A unilateral relocation rule would introduce considerable uncertainty into land ownership and incite litigation. *Stamatis v. Johnson,* 71 Ariz. 134, 224 P.2d 201, 203 (1950); see also *Davis v. Bruk,* 411 A.2d 660, 665 (Me.1980). In addition, the easement holder could be subject to harassment by the servient owner's attempts to relocate to serve his own conveniences. *Davis,* 411 A.2d at 665. A handful of courts permit the servient estate owner to unilaterally relocate the easement if the original termini are retained and the easement holder is not materially inconvenienced. Bruce & Ely, *supra,* ¶ 7.05[4]. However, even if we were to apply this exception, the record

fully supports the court's decision. Mr. Hill testified that he was not notified about the relocation beforehand, and the new road required him to enter the Rainbow Canyon property through his back yard instead of through his front entrance, which had been specially designed and landscaped.

We hold that the trial court properly applied the law to the facts of this case to determine the location of the Hill easement. The Judgment entered by the trial court is affirmed except to the extent it was amended as described in the following section.

*RCR, Inc.,* 978 P.2d at 587–89.

[¶ 6] Over the years prior to Gray's acquisition of his lands, all Fishing Club members had access to the Fishing Club lands across the lands owned by Gray's predecessors in interest. However, Gray would not allow such access, and in *RCR I* the district court found that the Fishing Club members had no "right" (by prescriptive easement or otherwise) to cross Gray's lands. Thus, the Fishing Club members sought a private road. In *R.C.R., Inc. v. Deline,* 2003 WY 62, 70 P.3d 214 (Wyo.2003) (hereafter *RCR II* ), we affirmed an order of the district court which, in turn, had affirmed an order of the Board of County Commissioners of Carbon County, establishing a private road in favor of the Delines (and other members of the Fishing Club), across Gray's property. That road was entirely separate and apart from the Hill Easement. In that case, Gray did not challenge the Fishing Clubs members' right to the road, but only the damages awarded by the county commissioners. A factor in the location of that road was to minimize any interference caused by the private road with Gray's plan to subdivide the lands he owned (i.e., it was laid out along section lines only, rather than the more direct route originally sought by the Delines, et al.). We note that the private road was designed to provide the Delines, as well as other lot owners in the Fishing Club, with access to their lots on the Fishing Club property. The bulk of the Fishing Club acreage was a common/shared area, but each member had a lot on which to place a mobile home or other structure. One of the issues raised by Gray in this case was

whether or not that road could be further used by the Delines for access from their lot, across Fishing Club lands, to other locations within the Fishing Club lands. Gray's contention in this regard also extended to Fishing Club members using the private road to access other lands that are not at issue in this litigation, to which the Fishing Club and its lot owners had obtained access (the Fishing Club members also had access to other nearby lands for the purpose of fishing, including lands on the opposite bank of the Encampment River from the Fishing Club). Gray puts great emphasis on the fact that the members of the Fishing Club had access via the private road, but the Club itself did not have a right to the private road. We also take note that while the Hill Easement is less than one full type-written page in length, and the description of the private road fills about two full pages (including a map of it), Gray devotes almost 35 pages in his brief to describe what those two documents purportedly mean, although they are quite plain and straight forward on the face of things. We also note that the right to use the private road was given to the parties to that litigation, as well as "... their heirs, successors and assigns and all subsequent owners of the Benefited Lands."

[¶ 7]   Because of financial and other problems, eventually Hill found it necessary to sell his home and the lot it was on.  The Delines purchased it.  Of course, Deline also acquired the Hill Easement across Gray's lands with that purchase.  The necessity for Hill's sale was brought about by an involuntary bankruptcy proceeding initiated by a company controlled by Gray. Gray acquired Hill's stock in the Fishing Club from his bankruptcy estate.  Gray has used his position as a stockholder in a manner that the other stockholders objected to, and that matter is now before this Court in *GOB, L.L.C. v. Rainbow Canyon, Inc., et al.,* Case No. S–08–0035.

## STANDARD OF REVIEW

[¶ 8]   "Final orders and judgments entered in declaratory judgment proceedings may be reviewed as in other civil actions." Wyo. Stat. Ann. § 1–37–109 (LexisNexis 2007).  "When a declaratory judgment proceeding involves the determination of an issue of fact, the issue may be tried and determined as in other civil actions." Wyo. Stat. Ann. § 1–37–111 (LexisNexis 2007):

> Following a bench trial, this Court reviews a district court's decision using a clearly erroneous standard for factual findings, but a de novo standard for conclusions of law. *Belden v. Thorkildsen,* 2007 WY 68, ¶ 11, 156 P.3d 320, 323 (Wyo.2007). The issue in this case presents a question of law, so we do not defer to the district court's conclusion, and uphold it only if it is correct. *Eklund v. Farmers Ins. Exch.,* 2004 WY 24, ¶ 10, 86 P.3d 259, 262 (Wyo. 2004).

*Pinther v. Ditzel,* 2007 WY 116, ¶ 3, 163 P.3d 816, 817 (Wyo.2007).  In the instant case we are confronted with both questions of fact and questions of law.

## DISCUSSION

[¶ 9]   As we begin this phase of our resolution of this appeal, we summarize that the Delines had access to the Fishing Club land via the private road obtained by the members of that Club. They also had access to the property formerly owned by Hill via the easement obtained by Hill from Gray's predecessors in interest.  The instant disputes arose, inter alia, because of an "Affidavit Affecting Title" that Gray caused to be recorded on July 13, 2004, in the Carbon County Clerk's Office.  That document provided:

> Jon R. Gray, of lawful age and being duly sworn and says that:
>
> 1.   He is the President of R.C.R., Inc., a Wyoming corporation, with mail address at P.O. Box 747, Saratoga, Wyoming, 82331, and makes this *AFFIDAVIT* of his own personal knowledge.
>
> 2.   R.C.R., Inc. is the owner of certain lands lying and being in Carbon County, Wyoming, described in Exhibit A, attached hereto.
>
> 3.   Robert E. Deline and Annabelle Deline, husband and wife, (The Delines) are the owners of a residence lying and being on certain lands in Carbon County, Wyo-

ming described in Exhibit B, attached hereto.

4. Access to the land in Exhibit B is over the lands in Exhibit A, by virtue of an EASEMENT, recorded in Book 694, Page 236, in the records of the Carbon County Clerk, confirmed by the Supreme Court of Wyoming.

5. The land described in Exhibit B is a lot 150 feet by 150 feet and the EASEMENT is appurtenant to and for the benefit only to this land and no other, and any attempt to use the EASEMENT to access other lands is a legal violation of the specific terms of the EASEMENT.

6. R.C.R., Inc. demands strict compliance with the terms of the EASEMENT and the Order of the Court.

7. The easement granted to The Delines, Gary L. and Nancy J. Palmer and Kirk Company, Applicants for a private road, and William Irvin, Kirk Company's successor in titled [sic], by virtue of the private road action before the Commissioners of Carbon County, by Order attached hereto as Exhibit C, does not allow access to the lands described in Exhibit B or any other lands except the "Benefited Lands" set forth in the Order.

[¶ 10] The Delines were interested in marketing the "Hill House." Gray believed that the Delines were exaggerating the extent of the easement across his lands to the Hill House. Therefore, he began locking gates and placed a sign on the easement to the Hill House that read:

## NOTICE

BY COURT ORDER, THIS ROAD IS A 30 FEET EASEMENT RECORDED IN THE RECORDS OF THE CLERK'S OFFICE OF CARBON COUNTY, BOOK 694, PAGE 236. IT IS ONLY FOR THE BENEFIT OF THE LAND DESCRIBED.
THE LAND IS A LOT 150 FEET X 150 FEET. WHITE FENCE POST ON THE LAND LOT LINES ON BOTH SIDES OF THE RED GATE INDICATES THE EAST AND WEST LOT LINES.
ANY ACCESS BY ANY MEANS BEYOND THESE LINES AND BEYOND 150 FEET TO THE BACK IS A TRESPASS. A VIOLATION MAY RESULT IN LEGAL ACTION OR THE GATE MAY BE LOCKED. IF QUESTIONS, CONSULT WITH YOUR ATTORNEY. STRICTLY ENFORCED.

[¶ 11] It is Gray's position that the Delines could only use the Hill Easement to get to the Hill House, as well as the 150–foot square lot, i.e., 22,500 square feet, on which it was constructed. Gray contended that the Delines could not go off that lot to cross over lands owned by the Fishing Club, even though the House was entirely surrounded by Fishing Club lands. Indeed, there were "informal" roads within the boundaries of the Fishing Club that could be used to traverse those lands so as to reach the homes of other Club members and to reach the river for fishing and other recreational activities. Moreover, as one exited the Hill House, the Hill Easement crossed the private road that was available to the Delines and other Club members. It was Gray's position that the Delines could not use the easement and make a right turn off the easement in order to use the private road to go to the riverside properties and the fishing areas.

[¶ 12] For these reasons, the Delines filed a complaint for declaratory relief and for injunctive relief. The relief requested was that the district court declare that the Delines could leave the boundaries of the 150–foot square Hill House lot so as to enjoy the Fishing Club lands and, furthermore, that they could use the Hill Easement and make a right turn onto the private road. In addition, they asked that the district court declare the affidavit set out above to be null and void and of no effect whatsoever. Finally, they asked the district court to enjoin Gray from improperly locking gates and from posting signs that served to cast doubt upon, or to otherwise defame, their title to the Hill Easement or the Hill House. As we noted in our introduction, the district court essentially granted the Delines all the relief they sought in their complaint.

[¶ 13] The district court conducted two days of hearings on August 14 and 15, 2005. One day of hearing was devoted to the pre-

liminary injunction, which the district court granted. The other was devoted to all other issues, including making the injunction permanent. We continue our discussion, quoting from the district court's "Findings of Fact and Conclusions of Law and Judgment:"

A dispute has arisen over the scope of the Delines' use of the 1979 Easement. At the time the Hill house was constructed in the late 1970's, certain improvements appurtenant to the house encroached beyond the boundaries of Lot 5 on the east and north onto the lands of Rainbow Canyon. Subsequently, after complaints were made by Gray, Rainbow Canyon granted an easement allowing use of Rainbow Canyon property for driveway access to the north side of the Hills' property, for a septic system serving the Hill property, and for a propane tank. Exhibit 19. Gray asserts that these appurtenances to Lot 5 constitute a trespass, by means of an unauthorized expansion of the dominant estate as defined in the 1979 Easement.

[The Delines] seek a declaratory judgment that historical use of Lot 5 by Mr. and Mrs. Hill and now by Mr. and Mrs. Deline do not violate the terms of the 1979 Easement. Specifically they seek a declaratory judgment that they have the right to proceed from their property to the other lot that they own along the Encampment River (Lot 3), as well as to use all of the lands of Rainbow Canyon for recreational purposes. Specifically, they also request a declaratory judgment that proceeding to Lot 3 along the course of their Private Road, after having accessed Lot 5 by use of the 1979 Easement, does not constitute a trespass on RCR's property or an abuse of their rights under the 1979 Easement. They further seek a declaratory judgment that an affidavit recorded by Gray on behalf of RCR in the real property records [of] Carbon County, Exhibit 6, does not affect title to their property. . . . Finally, Mr. and Mrs. Deline seek a permanent injunction barring Mr. Gray and RCR from placing signs on fences and gates on or near the easement which declare that the Delines or imply that the Delines are

in violation of the terms of the easement and threatening to close the easement.

RCR and Gray deny that the Delines are entitled to a declaratory judgment and argue that: (1) any travel by the Delines past the boundary of Lot 5 constitutes a trespass on the RCR property and a violation of the Hill easement, as this would constitute use of the easement for another dominant estate not identified in the Hill easement; (2) that the encroachments on Rainbow Canyon land by the Delines as owners of Lot 5, consisting now of periodic use of a rough driveway around to the north side of the house on Lot 5 and use of the septic field on Rainbow Canyon property constitutes a violation of the Hill easement for the same reason; and (3) that any method of transportation by the Delines from the house on Lot 5 to their trailer on Lot 3, by means of the private road to Lot 3 or otherwise, constitutes a similar trespass and violation of the Hill easement.

The Court begins with the basic principles of the law of easements and interpretation. When construing an easement, we seek to determine the intent of the parties to the easement. "To determine the intent of the parties, the context in which the easement was drafted must be considered." *Lozier v. Blattland Investments, LLC*, 100 P.3d 380, 383–84 (Wyo.2004). "Words are given the plain meaning and effect that reasonable persons would give them at the time and place of their use." *Id.*

Consistent with the holding of the Court in the *Lozier* case, this Court admitted extrinsic evidence at trial with regard to the context in which the Hill easement was drafted in 1979.

As one authority states,

The intention of the parties to an expressly created servitude [i.e., easement] is ascertained from the servitude's language interpreted in light of all the circumstances. Relevant circumstances include the location and character of the properties burdened and benefited by the servitude, the use made of the properties before and after creation of the servitude, the character of the surround-

ing area, the existence and contours of any general plan of development for the area, and the consideration paid for the servitude.

RESTATEMENT (THIRD) PROPERTY (SERVITUDES), § 4.1, comment c (2000). The evidence here establishes that the 1979 easement was created in order to document an existing, historical right of access. Mr. Hill acquired his Lot 5 as a privilege of membership in the Rainbow Canyon fishing club. As he testified, his only reason for building a home on Lot 5 was to enjoy the privileges of membership in Rainbow Canyon, and specifically to fish in Encampment River. His recreational activities were well known to Kermit Platt. They were friends and frequently fished together. The Court finds that Mr. Hill had historically accessed Lot 5 through the lands of RCR's predecessor, and that Mr. Hill went from the confines of his lot to use the lands of Rainbow Canyon and the adjoining lands of Rainbow Canyon for fishing and other recreational purposes with the full knowledge and approval of Mr. and Mrs. Platt.

The Court finds that Mr. Gray was also familiar with this use of the 1979 Easement to access Lot 5, and was familiar with the use of the Rainbow Canyon lands by Mr. Hill for recreational purposes. The Court finds that Mr. Gray made no objection to Mr. Hill's recreational activities until disputes arose in the late 1990's regarding the location of the access road for the 1979 Easement and use of the access road by other members of Rainbow Canyon.

In short, the context in which the Hill easement was drafted in 1979 was that of a simple agreement to document an existing way of necessity. There is no evidence to show that the parties intended that Mr. Hill and his family not be allowed to go beyond the 150 foot square confines of Lot 5, and there is no evidence to suggest that anyone intended that Mr. Hill not be able to fish on the lands of Rainbow Canyon while residing at this house. One cannot read such a limitation from the plain language of the easement.

Further, interpreting the easement to allow the owner of the dominant estate to use other property rights appurtenant to ownership of the land, such as a license to go fishing on Rainbow Canyon land and the easement for certain physical encroachments convenient to the use of the house on Lot 5, is not inconsistent with the express terms of the 1979 Easement. The Court finds that Mr. Platt and Mr. Hill and their spouses did not intend to limit the historically unrestricted use of the easement, and did not intend to limit the Hills' use of Lot 5 to enjoy the fishing on adjoining lands. To suggest that Platt and Hill intended that Hill could legally access his property, but that he could not go fishing, is simply unreasonable under the circumstances of this case. Mr. Hill clearly intended to use his property, the dominant estate, to its full extent. To paraphrase the opinion of the Court in *Lozier*, the Court has been shown no reason, and can imagine none, why either Hill or Platt would have intended to prevent [Hill] from using his land as a base from which he could go fishing along the lands of the fishing club of which he was a member. 100 P.3d at 380, 385.

Gray and RCR argue that the beneficiary of an appurtenant easement is not entitled to use the servient estate (RCR's property) for the benefit of property other than the dominant estate, i.e., Lot 5. While this accurately states an accepted rule of the common law of easements, this rule does not support Gray's position here. The Delines do not wish to use the servient estate to benefit the lands of Rainbow Canyon. He does not argue that members of Rainbow Canyon at large can use the 1979 Easement, nor that the owners of Lots 1, 2 and 3 can use the 1979 Easement. No additional dominant estate is served by the 1979 Easement, nor is such proposed by [the Delines]. Rather, the Delines, as did the Hills before, simply use the lands of Rainbow Canyon, Inc., to increase their enjoyment of the dominant estate, Lot 5. The Court finds that no additional dominant estate is being attached to the Hill easement by virtue of the Delines' use of other easements or licenses appurtenant to their land or their membership in Rainbow Canyon, Inc.

The rule against using an easement for the benefit of property other than the dominant estate "reflects the likely intent of the parties by setting an outer limit of the potential increase in use of an easement brought about by normal development of the dominant estate...." RESTATEMENT, section 4.11, comment b. Applying this rule of law to prevent the Delines from traveling beyond the strict confines of Lot 5 to use the lands of Rainbow Canyon, Inc., would not serve the purpose of the rule. The Court finds that the Delines do not increase any use of the roads across RCR property when [the Delines] go fishing, travel to the homes of other Rainbow Canyon members, or engage in other recreational activities from their home. Indeed, if Mr. and Mrs. Deline decide to walk from their house on Lot 5 to their Lot 3, river [lot], taking a direct course across the land of Rainbow Canyon, rather than by driving along the course of the private road over RCR's property, they impose a lesser burden on the servient estate, not more.

The Court also finds that [the Delines] have an unlimited right of use of the private road easement to access Lot 3. Nothing in the private road decree limits the Delines['] use of this road, or provides that this road cannot be used in combination with other access rights. It is the nature of a private road easement created pursuant to statute that its right of access is unrestricted.

Finally, the Court finds that the claims of [the Delines] are not barred by res judicata or collateral estoppel. No issue regarding the use of lands other than Lot 5 as a violation of the scope of the 1979 Easement was raised or considered in *RCR I*. See *Bard Ranch Company v. Weber*, 557 P.2d 722, 726–27 (Wyo.1976) ("former judgment not dispositive of any claim that might have been brought into the litigation but was not.").

**Are the Delines' Claims Barred by:**

**(1) Splitting Causes of Action**

▆▆▆ [¶ 14] Gray contends that if the Delines wanted to litigate the issues resolved in this case, then they had to have raised those issues in *RCR I*, because the rule against splitting causes of action prohibits them from now pursuing any matters related to the Hill Easement. We agree that Wyoming has recognized the rule against splitting causes of action. *Foianini v. Brinton*, 855 P.2d 1238, 1240 (Wyo.1993); and see generally 1A C.J.S. *Actions* §§ 224–233 (2005). In that case we cited the RESTATEMENT (SECOND) OF JUDGMENTS § 24 for guidance in determining the dimensions of the word "claim" for purposes of applying the rule against splitting causes of action. We also noted that that rule and res judicata are closely related rules. Much like the *Foianini* case, the circumstances at large here do not form "a convenient trial unit." Indeed, while we do not intend to assign "blame" here, it appears that Gray has relentlessly pursued legal, as well as perhaps some extra-legal, remedies in his campaign to frustrate the Delines' enjoyment of their property. It is Gray who has created, or recreated, causes of action that the Delines, of necessity, had to pursue in self-defense. The purpose of the rule against splitting causes of action is "to promote fairness to the parties by protecting defendants against fragmented, harassing, vexatious, and costly litigation, and the possibility of conflicting outcomes." 1A C.J.S. *Actions* § 226 (2005). While Gray is nominally the "defendant" in this litigation (as he has been in the past as well), it is Gray's conduct/misconduct that has necessitated all of the legal proceedings concerning the Fishing Club. Although Gray did not develop this issue in much detail or with much clarity, it is evident from the record that the Delines' lawsuit was prompted by harassment from Gray and that the outcome of this case is wholly consistent with *RCR I*. The Delines' action was not barred by the rule against splitting causes of action.

**(2) Judicial Estoppel**

▆▆▆ [¶ 15] Judicial estoppel is applied to foreclose a party from maintaining inconsistent positions in judicial proceedings. The doctrine is applied sparingly and not in a

highly technical manner that prevents litigation on the merits. *Beaulieu v. Florquist,* 2004 WY 31, ¶ 16, 86 P.3d 863, 869 (Wyo. 2004). We have also held that judicial estoppel

> is sometimes referred to as a doctrine which estops a party to play fast and loose with the courts or to trifle with judicial proceedings. It is an expression of the maxim that one cannot blow hot and cold in the same breath. A party will just not be allowed to maintain inconsistent positions in judicial proceedings. . . .

*Allen v. Allen,* 550 P.2d 1137, 1142 (Wyo. 1976). Judicial estoppel requires that "where a man is successful in the position taken in the first proceeding, then that position rises to the dignity of conclusiveness." *Erhart v. Flint Engineering & Const.,* 939 P.2d 718, 724 (Wyo.1997) (citing *Hatten Realty Co. v. Baylies,* 42 Wyo. 69, 290 P. 561, 566 (1930)). There is no indication in the record or briefs that Berg was ever successful in the position at issue; but since the judicial estoppel argument is not supported by cogent argument or pertinent authority, we will not consider it. See *May v. May,* 945 P.2d 1189, 1191 (Wyo.1997)

*Cross v. Berg Lumber Co.,* 7 P.3d 922, 930–31 (Wyo.2000).

▮ [¶ 16] Gray's claim of judicial estoppel is based upon his contention that the Delines should be estopped from claiming that the 1979 easement benefits Rainbow Canyon, Inc., lands because they did not seek to have Rainbow Canyon, Inc., added as a party to the private road litigation. The present litigation does not, however, seek to adjudicate the right of Rainbow Canyon, Inc., or any of its owners to use the 1979 easement. Rather, this litigation concerns the Delines' use of the 1979 easement as access to the former Hill property and, in turn, the appurtenant right to then enjoy the use of Rainbow Canyon lands. We conclude that judicial estoppel does not apply to the circumstances presented here. See *Wilson v. Lucerne Canal and Power Co.,* 2007 WY 10, ¶¶ 27–28, 150 P.3d 653, 663–64 (Wyo.2007).

### (3) Collateral Estoppel

▮ [¶ 17] Collateral estoppel bars re-litigation of previously litigated issues (as contrasted with "claims"), as well as issues which could have been but which were not raised in the prior litigation. *Pokorny v. Salas,* 2003 WY 159, ¶¶ 12–20, 81 P.3d 171, 175–77 (Wyo.2003). These factors are used in the analysis of collateral estoppel: (1) Whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *RCR I* dealt only with the location and not its scope and hence collateral estoppel did not bar the Delines from pursuing this litigation. Moreover, it was Gray's conduct in attempting to unilaterally limit the Delines' use of the easement and otherwise interfere with their property rights that necessitated this litigation. See Wilson, ¶¶ 21–25, 150 P.3d at 662–63.

[¶ 18] The only one of those four factors that is met here is that the parties are the same. The issues are not identical, there was a determination on the merits but both the issues and the claims are entirely different here, and the Delines did not have an opportunity to litigate the issues now before us because they had not yet come to light. The Delines' action was not barred by the principles that constitute collateral estoppel.

### (4) Res Judicata

▮ [¶ 19] Res judicata bars the re-litigation of previously litigated claims or causes of action, as well as claims that could or should have been raised in the prior litigation. *Pokorny,* ¶¶ 12–20, 81 P.3d at 175–77. These factors are applied to the analysis of res judicata: (1) Identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and

the issues between them. Our resolution of the collateral estoppel contentions applies equally to res judicata. Res judicata did not bar this litigation, which was prompted almost exclusively by Gray's improper interference with the Delines' property rights. See Wilson, ¶¶ 21–25, 150 P.3d at 662–63.

**Erroneous Application of *Lozier v. Blattland***

[¶ 20] Gray contends that the interpretation the district court placed on *Lozier v. Blattland,* 2004 WY 132, 100 P.3d 380 (Wyo. 2004) changes the law dramatically because its "implicit" holding "requires a new evidentiary hearing in all cases to determine the intention of the parties, even where the matter has been previously and fully litigated[.]" Continuing, Gray postulates that "[s]uch a construction will substantially chill the free transferability of any real property which is a subservient estate to any easement since the scope and burden of that easement would be subject to re-interpretation and re-evaluation at any time a dominant estate holder requested."

[¶ 21] We need not set out our holding in *Lozier* here. It suffices to note that Gray grossly exaggerates the doom that the district court's application of that case, in these circumstances, spells for owners of servient estates. To allay any lingering concerns, we do not view the district court's decision in this case as altering/expanding/contracting the essence of our holding in *Lozier* in any way.

**Unilateral Expansion of *Size* of Dominant Estate**

[¶ 22] Gray also contends that the district court's order amounts to allowing the Delines to unilaterally expand the size of the dominant estate. We assume the word "size" is emphasized because Gray made no claim that the "burden" on the easement had been expanded and the facts establish that the Delines used the easement at issue only a few times a year. The Delines do not live on the Fishing Club property (either at the Hill House or their riverside property). Rather, they visit it for purposes of recreation (mostly fishing) a few times a year. However,

Gray contends that when the Delines do visit their properties, the easement only allows them to go to the lot on which the Hill House is located. The expansion that Gray is concerned about is that the Delines have "persisted" in departing the lot on which the Hill House is located and going onto the lands of the Fishing Club. They also go to and from the Hill lot across a driveway to their house and that driveway is, at least in part, on Fishing Club land and not the Hill lot. In addition, the Delines go onto another bit of land that the Fishing Club allows them to use near the Hill House for a septic field. They also drive on the easement to get to the private road and then make a right turn to go down to the river on the private road, or a left turn to leave the area by way of the county road. Finally, they occasionally access their one-half acre riverside lot by going across the Fishing Club lands on informal roads that the Fishing Club members have created.

[¶ 23] We conclude that the district court did not err in taking evidence about the circumstances which surrounded the creation of the easement and that none of its findings of fact is clearly erroneous. Indeed, the district court took a very sensible and rational approach to resolving this festering conflict by applying a process which very closely resembled the process, as described by Powell in his treatise on Property:

§ 34.12 **Determining extent of Easements Created by Written Instrument**

The "extent" of an easement includes not only its duration but also its constituent ingredients while it lasts. The constituent ingredients frequently include not only a primary right, such as a right to a way across the servient tenement, but also supplementary or secondary rights that serve to effectuate the primary right, such as the privilege of entering on a servient tenement for needed acts of repair or maintenance of the way. The resulting aggregation of privileges held by a dominant owner takes its basic framework from the kind of easement in question, differing greatly, for example, in an easement of way, an easement for irrigation, and an easement in a party wall. The most signif-

icant factor concerning the extent of an easement is the manner in which the easement is created. Most easements have as an ingredient in their creation a written instrument containing language that helps in determining the easement's extent. Others do not have this factor and their extent must be inferred wholly from the circumstances surrounding their creation.

The most common situation within the scope of this section is the case in which a deed of conveyance purports to create a specific easement. . . .

This ingredient brings into the picture all of the established techniques for the construction of written instruments (*see* § 24.03 *above*). Thus, with respect to the scope of the easement created, courts stress the primary control exercised by the language of the creating conveyance. They recognize also the imperfections of language, especially as it is found in the instruments of conveyancers, and utilize for the resolution of ambiguities the circumstances of the instrument's formulation. Sometimes, these circumstances are utilized still more generously for the manufacture of an intent attributed to the conveyer. With respect to the scope of easements, five types of circumstances are frequently important, namely:

(1) whether the easement was created by grant or by reservation;

(2) whether the conveyance was, or was not, gratuitous;

(3) the use of the servient tenement prior to the conveyance;

(4) the parties' practical construction of the easement's scope; and

(5) the purpose for which the easement was acquired.

There is considerable strength in the constructional preference for resolving ambiguities of a conveyance in favor of the conveyee. This tends to cause ambiguities as to the extent of an easement to be resolved in favor of the conveyee owner of the dominant tenement, but against conveyors who have reserved easements in their own favor. When the conveyance is gratuitous, the effort to give effect to the words as they were understood by the conveyee diminishes, and, within the limits set by the rules of evidence, the court seeks to ascertain the subjective intent of the conveyor.

When the conveyance affects only a part of the conveyor's land and, prior to the conveyance, there has been a quasi-easement as between parts of the conveyor's land (*see* § 34.08 *above*). This prior use of the quasi-servient parcel can help in determining the scope of an easement incompletely described in the conveyance.

When a conveyance is unclear as to the scope of the intended easement, the subsequent behavior of the parties can constitute a practical construction furnishing the missing details.

Courts generally hold, where the scope of an easement is unclear, that the servient tenant in the first instance, and the dominant tenant secondarily, has the power to define the scope by reasonable action.

. . . .

It is often said that the parties are to be presumed to have contemplated such a scope for the created easement as would reasonably serve the purposes of the grant. This provides a factor of elasticity, which has been most useful. Under this presumption, many courts have liberally read in expansions of the permitted use caused by technological innovations, by subsequent developments of the locality, or by changes in the use of the dominant parcel said to have been "contemplated by the parties."

4 *Powell on Real Property,* § 34.12 (Michael Allen Wolf ed., LexisNexis Matthew Bender 2007–2008).

[¶ 24] The language of the easement is set out in detail in our recitation of the decision we made in *RCR I,* above. The uses the Delines make of the easement are reasonable in every respect, given the language used in the written conveyance. Those uses are much the same as the uses made by Hill and contemplated by Platt (although perhaps somewhat less than the uses made by Hill). The district court did not err by going outside the four corners of the easement to ascertain its "extent" or "scope," and its con-

clusions are wholly consistent with governing law.

## CONCLUSION

[¶ 25]   We find no merit in any of Gray's contentions.   Therefore, the judgment of the district court is affirmed.