2003 WY 159

Richard POKORNY and Julia Goldensohn, Appellants (Intervening Counterclaim Plaintiffs),

and

Snake River Holdings, LLC, Appellant (Defendant),

v.

Patrick D. SALAS and Kathleen L. Salas; Sal G. Giacinto and Linda T. Giacinto (Trustees); Donald L. Wadsworth and Gwenn E. Wadsworth (Trustees), Appellees (Plaintiffs),

and

Porcupine Creek Ranch Limited Liability Company; Hereford–Bally Ranch Limited Liability Company; Creed Law and Alta Clarene Law, Appellees (Intervening Plaintiffs).

No. 02–241.

Supreme Court of Wyoming.

Dec. 12, 2003.

Representing Appellant(s): Christopher Hawks of Christopher Hawks, P.C., Jackson, Wyoming.

Representing Appellee(s): Peter F. Moyer, Jackson, Wyoming; David K. Larson and Matthew E. Turner of Mullikin, Larson & Swift, Jackson, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   This case concerns two easements in the Game Creek Plateau area of Teton County, Wyoming.  Due to the area's topography, the easements provide the only viable access

to various properties within the Game Creek Plateau. The original owners of a large portion of the land created the two easements to provide access to residential subdivisions in the area and to guarantee future access to the land they retained, which otherwise was inaccessible. Both appellants and appellees are successors in interest to the original owners, yet the former contend neither easement provides such access, while the latter argue both easements do just that. The district court held both easements provide access to all owners in the area. We affirm.

## ISSUES

[¶ 2] The issues presented are: (1) Whether appellants are estopped by the doctrines of collateral estoppel, res judicata and/or judicial estoppel from claiming that the 1972 right of way easement does not grant access rights to the appellees; and (2) Whether the 1978 reserved easement is appurtenant or in gross?

## FACTS

### The 1972 Easement

[¶ 3] The original Game Creek Plateau landowners, Hugh and Donna Marie Soest (Soests), owned a large parcel of land contiguous to the only public access, the Game Creek Road. In 1972, the Soests granted a 60–foot wide right-of-way easement to Squaw Creek Ranches, Inc., a subdivision. Without the easement, the Squaw Creek Ranches property owners would have been landlocked. The easement also granted access to "any other person or persons, for his or their benefit and advantage, at all times freely to pass and repass ..." over and across Squaw Creek Road from the terminus of the Game Creek Road[1] through lands owned by the Soests. Their land was ultimately divided into four separate contiguous parcels which lie south of the Game Creek Road terminus: Segment One, adjoining the road, the Squaw

Creek Draw 40, the Reardon 40 and the Hayfields (see attached map, Appendix A). The easement terminated at the south end of the Squaw Creek Draw 40 property, and did not continue south to the remainder of the Soests' property (the Reardon 40 and the Hayfields).

### The 1978 Easement

[¶ 4] After granting the 1972 easement, the Soests began selling parcels of their land. A portion of Segment One, now called "The Horse Palace," was one of the first parcels to be sold and was conveyed to James and Patty Scott (Scotts) in 1974. In a 1978 warranty deed, the Soests conveyed forty acres to the Reardon group (Reardon 40). In a 1979 warranty deed, the Soests conveyed another forty acres to a different buyer (Squaw Creek Draw 40). The Reardon 40 is located just south of the Squaw Creek Draw 40 and north of the large tract of land retained by the Soests (Hayfields).

[¶ 5] In the Reardon 40 transaction, the Soests reserved for themselves an easement (the 1978 easement) to preserve access across the Reardon 40 to the Hayfields. This easement, together with the 1972 easement, provided access all the way from the Game Creek Road, through Segment One, through the Squaw Creek Draw 40, and through the Reardon 40 to the retained Hayfields. No other access to the Hayfields existed at the time the 1978 easement was created.[2]

### The 1981 Litigation

[¶ 6] In 1981, litigation ensued concerning the 1972 easement (*Scott v. Squaw Creek Ranches, Inc.*). The Scotts, owners of the only land contiguous to the Game Creek Road, which was the singular public access to the Game Creek Plateau, sought quiet title to their land against all individuals using the 1972 easement who did not own property in

---

1. The Game Creek Road is the "public" access road to the Game Creek Plateau area. While the record does not tell us the exact nature of the Game Creek Road, for purposes of this case, we will presume it is a public road.

2. It was argued in the summary judgment hearing that the easement was not the only route to the Hayfields. However, one suggested alternative route was a forest service trail that required a permit and was completely washed out and unusable. The other suggested route, the Porcupine Road, was not in existence in 1978.

the Squaw Creek Ranch subdivision, a grantee of the easement which is south of the Scotts' property. In other words, the Scotts sought a court ruling to the effect that only Squaw Creek property owners could use the 1972 easement, and all other property owners in the Game Creek Plateau area would be barred from using it, including the owners of the Hayfields and the other subdivisions in the area. The defendants in that 1981 litigation, who did not own property in Squaw Creek, argued the express terms of the 1972 easement granting access to "any other persons" provided them and *all* of the Game Creek Plateau residents access. Some of the appellants in this action who seek to defeat the 1972 easement are successors to those defendants who took the opposite position in the 1981 litigation.

[¶ 7] At trial, the district court granted a directed verdict[3] motion and entered judgment in favor of the defendants. Although the Scotts filed a notice of appeal, the appeal was dismissed on February 1, 1982.

### The Present Case

[¶ 8] Over fifteen years after the 1981 litigation ended, the current Hayfields Property Owners,[4] apparently seeking to confirm their easement, requested that the appellants,[5] landowners in the Reardon 40 and the Squaw Creek Draw 40, sign a document entitled "Confirmation." When the appellants refused to do so, the Hayfields Property Owners sued seeking a declaratory judgment that the easements allowed them access over and across the Squaw Creek Draw 40 and

the Reardon 40, all the way through to the Hayfields. The appellants asserted the Hayfields Property Owners did not have access under the 1972 easement because it was not intended for general use. They also contended the Hayfields Property Owners had no access across the Reardon 40 under the 1978 easement because it was not appurtenant to the Hayfields and terminated when the Soests sold their property.

[¶ 9] The parties filed cross motions for summary judgment on November 13, 2001. After a hearing on November 19, 2001, the district court entered an order granting the Hayfields Property Owners' motion for summary judgment finding that the 1972 easement granted access to the general public, which included the Hayfields Property Owners. Further, the court held the 1972 easement was confirmed by the 1981 judgment in *Scott v. Squaw Creek Ranches, Inc.* Thus, the appellants were barred by the doctrines of collateral estoppel and judicial estoppel from denying the Hayfields Property Owners and their heirs and successors access across the 1972 easement.

[¶ 10] As to the 1978 easement, the district court held it was a valid, enforceable easement appurtenant to the Hayfields. This appeal followed.

## DISCUSSION

### The 1972 Easement

[¶ 11] The appellants claim the 1972 easement is not a public easement[6] and its use is

---

3. The term directed verdict is now identified as judgment as a matter of law. A motion for a directed verdict is procedurally identical to a motion for judgment as a matter of law under the current W.R.C.P. 50. *Cargill, Inc. v. Mountain Cement Co.*, 891 P.2d 57, 62 (Wyo.1995).

4. Patrick D. Salas and Kathleen L. Salas, Sal G. Giacinto and Linda T. Giacinto (Trustees), Donald L. Wadsworth and Gwenn E. Wadsworth (Trustees), Appellees/Plaintiffs, and the Porcupine Creek Ranch Limited Liability Company; Hereford–Bally Ranch Limited Liability Company; Creed Law and Alta Clarene Law, Intervening Plaintiffs/Appellees.

5. Richard Pokorny and Julia Goldensohn, Intervening Counterclaim Plaintiffs, and Snake River Holdings, LLC, Defendant. (Game Creek Ranch;

Squaw Creek Ranch; and Porcupine Properties, Appellants/Intervening Counterclaim Plaintiffs, moved for voluntary dismissal after oral argument. With no objection from the appellees, those parties were dismissed from the case on November 18, 2003.)

6. The parties selected the adjective "public" to modify the word "easement." Technically, we are not deciding whether the easement is "public," but rather whether the easement is usable by a particular component of the public. *Owsley v. Robinson*, 2003 WY 33, ¶ 10, 65 P.3d 374, ¶ 10 (Wyo.2003) expounds on the crucial components of a technically public easement. In the instant case, there was no public dedication of an easement. Further, the easement in the present case is not being used in the same manner as areas typically regarded as public, such as streets, al-

limited to successors in interest to the Squaw Creek Ranch subdivision which was specifically named as a grantee of the easement. Further, they argue this claim is not barred by judicial estoppel, collateral estoppel, or res judicata. Conversely, the Hayfields Property Owners argue that the 1972 easement *is* a public easement, and the doctrines of judicial estoppel, collateral estoppel, and/or res judicata do apply. For reasons set forth below, we need discuss only the latter two doctrines.

[¶ 12] Collateral estoppel and res judicata are analogous, but not synonymous. Although they share a common interest in finality, the doctrines themselves are different. *Tenorio v. State ex rel. Wyoming Workers' Compensation Div.*, 931 P.2d 234, 238 (Wyo. 1997). We recently reiterated their differences:

> In *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶¶ 15–20, 25 P.3d 511, ¶¶ 15–20 (Wyo.2001), we extensively recognized that res judicata and collateral estoppel are related but distinct concepts.
>
> Res judicata bars the relitigation of previously litigated **claims** or **causes of action.** *Slavens v. Board of County Commissioners*, 854 P.2d 683, 686 (Wyo.1993). Four factors are examined to determine whether the doctrine of res judicata applies: (1) identity in parties; (2) identity in subject matter; (3) the issues are the same and relate to the subject matter; and (4) the capacities of the persons are identical in reference to both the subject matter and the issues between them. *Id.* Collateral estoppel bars relitigation of previously litigated **issues** and involves an analysis of four similar factors: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.* (Quoting

18 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 4443 at 382–85 (1981)).

*Polo Ranch Co. v. City of Cheyenne*, 2003 WY 15, ¶ 12, 61 P.3d 1255, ¶ 12 (Wyo.2003).

[¶ 13] Collateral estoppel is *issue* preclusion, while res judicata is *claim* preclusion. *Eklund v. PRI Environmental, Inc.*, 2001 WY 55, ¶ 15, 25 P.3d 511, ¶ 15 (Wyo. 2001). The appellants' claims in this case are not, in their entirety, identical to the previous claims in the 1981 litigation. However, an issue decided in the prior adjudication is identical to an issue presented in this case and, therefore, collateral estoppel is applicable.

[¶ 14] The appellants argue the district court erred when it found the doctrine of collateral estoppel barred them from denying the successors in interest to the Hayfields properties access over and across the 1972 easement. The appellants claim that because the district court granted a motion for a directed verdict in the 1981 litigation, their predecessors in interest were not given a full opportunity to present their case and, consequently, the issues were never fully heard or considered. Thus, according to the appellants, the district court should not have applied the doctrine of collateral estoppel. We disagree.

[¶ 15] The elements of collateral estoppel are as follows: (1) the issue decided in the prior adjudication is identical with the issue presented in the present action; (2) the prior adjudication resulted in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior proceeding. *Eklund*, ¶ 15.

[¶ 16] Here, the district court appropriately applied the doctrine because all of its elements were satisfied. First, the issue decided in *Scott v. Squaw Creek Ranches, Inc.* was identical to the issue appellants seek to

leys, and parks. Rather, the easement is for a

limited purpose.

raise in this lawsuit—whether the 1972 easement gave access to persons other than those in the Game Creek Ranch. The defendants' pretrial memorandum in the 1981 case reflects as much:

This case involves the use of a road which runs across Plaintiff's property (the Scott's property). Each of the Defendants own or have an interest in real property in the vicinity of the Scott's property. A written easement is the basis for the various Defendants' claim of a right to utilize the roadway for ingress and egress to their properties; with certain of the Defendants basing that claim on the fact that they are successors in interest to the named grantees in the easement and the remainder of said Defendants basing their claim on the right to use said roadway on the language in the easement referring to 'any other person or persons, for his own or their benefit and advantage, at all times freely to pass and repass on foot, or with animals, vehicles, loads or otherwise through and over' the road.

[¶ 17] Second, the 1981 litigation resulted in a judgment on the merits. The district court determined, after hearing the plaintiffs' evidence and testimony, that the defendants were entitled to a directed verdict. Directed verdicts are granted when all reasonable minds pondering the case could only come to the same conclusion the directed verdict contemplates. *Halliburton Co. v. Claypoole*, 868 P.2d 252, 256 (Wyo.1994); *Barnes v. Fernandez*, 526 P.2d 983, 985 (Wyo.1974); *see also* 19 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Civil § 2524 at 544 (1990). In *Town of Jackson v. Shaw*, 569 P.2d 1246, 1250 (Wyo.1977), we said:

In reviewing the grant of a directed verdict by a trial court, consideration must be given to all evidence favorable to party against whom the motion is directed, as well as to all reasonable and legitimate inferences which might be drawn therefrom. *McCarthy v. Croker*, Wyo.1976, 549 P.2d 323; *Barnes v. Fernandez*, Wyo.1974, 526 P.2d 983; *Brennan v. Laramie Newspapers, Inc.*, Wyo.1972, 493 P.2d 1044. Whether or not the evidence so viewed is

sufficient to create an issue for the jury is solely a question of law to be answered by the trial court. That court must determine whether or not the evidence is such that, without weighing the credibility of the witnesses, or otherwise, considering the weight of the evidence, there is but one conclusion as to verdict which men of reason could reach. *Town of Jackson v. Shaw*, 569 P.2d at 1250.

At the directed verdict stage, the plaintiff is given all favorable inferences, yet is still unable to sustain his position. We agree with the jurisdictions that hold a directed verdict is indeed a judgment on the merits. See *Casey v. Pennsylvania Asphalt Paving Co.*, 109 F. 744 (C.C.W.D.Pa.1901), affirmed in 114 F. 189, (C.C.A.3 Pa.1902), ( [A] judgment on a directed verdict in a federal court, based upon full evidence, is not a mere judgment of nonsuit, but it is in all respects a judgment on the merits); see also, *Sherman v. Benson*, 1998 WL 799304; *Latimer v. William Mueller & Son, Inc.*, 149 Mich.App. 620, 386 N.W.2d 618 (1986); *Phipps v. Paley*, 90 N.C.App. 170, 368 S.E.2d 21 (1988). After a directed verdict is granted, judgment is entered just as if both parties had litigated; and that judgment has the same force and effect as any other judgment.

[¶ 18] Both parties concede the third requirement. There is, indeed, privity between the parties to the 1981 litigation and the present case.

[8, 9] [¶ 19] Fourth, and finally, the appellants' predecessors had a full and fair opportunity to litigate the issues in the prior litigation. They mistakenly argue that due to the directed verdict, there was no "full and fair opportunity" to litigate this issue in 1981. However, this factor does not require that the party actually receive a full trial. Rather, the requirement is that the party be presented with the *opportunity to litigate*. The appellants' predecessors were presented with such an opportunity. They answered the complaint, conducted discovery, and submitted pretrial memoranda. Although there was no transcript, we must presume the trial was a fair one. Where there is no transcript before the court on appeal, the regularity of the trial court's judgment and the competen-

cy of the evidence upon which that judgment is based must be presumed. *Stadtfeld v. Stadtfeld,* 920 P.2d 662, 663 (Wyo.1996). Although the appellants' predecessors were presented with the opportunity to litigate, they were unable to present a case sufficient to survive the directed verdict stage.

[¶ 20] The district court properly concluded that collateral estoppel applied. Thus, the appellants are collaterally estopped from asserting that the 1972 easement language does not grant access to the Hayfields. Because collateral estoppel is determinative on the 1972 easement issue, we decline to decide whether the doctrines of res judicata and judicial estoppel also apply.

### The 1978 Easement

██ [¶ 21] The issue surrounding the 1978 easement is whether it is appurtenant or in gross. The appellants contend that the 1978 Warranty Deed from the original landowners to the Reardons "does not describe a benefited parcel," and the 1978 easement is therefore an easement *in gross* and thus was not assigned when the dominant estate was assigned. As a result, they argue the easement did not transfer to the current owners when they purchased the Hayfields property. The Hayfields Property Owners, on the other hand, contend the 1978 easement is appurtenant to the land because it was clearly intended to benefit the land retained by the original grantors of the easement and their successors; and, therefore, the 1978 easement did transfer to the current owners when the Hayfields were conveyed "subject to all easements."

[¶ 22] In *Hasvold v. Park County School District No. 6,* 2002 WY 65, ¶¶ 13–14, 45 P.3d 635, ¶¶ 13–14 (Wyo.2002), we distinguished between easements appurtenant and in gross:

" 'An easement is appurtenant to land when the easement is created to ·benefit and does benefit the possessor of the land in his use of the land.' " *Weber v. Johnston Fuel Liners, Inc.,* 519 P.2d 972, 975 (Wyo. 1974) (quoting *Restatement of Property* § 453, at 2914 (1944)). In contrast, " 'an easement is in gross when it is not created to benefit or when it does not benefit the

possessor of any tract of land in his use of it as such possessor.' " *Id.* (quoting *Restatement of Property, supra,* § 454, at 2917). An easement will not be presumed to be in gross when it can fairly be construed to be appurtenant. *Id. R.C.R., Inc.,* 978 P.2d at 586.

Wyoming law is consistent with the *Restatement (Third) Property,* which specifically details the differences between easements appurtenant and in gross as follows:

(1) Except where application of the rules stated in § 4.1 leads to a different result, the benefit of a servitude is:

(a) appurtenant to an interest in property if it serves a purpose that would be more useful to a successor to a property interest held by the original beneficiary of the servitude at the time the servitude was created than it would be to the original beneficiary after transfer of that interest to a successor;

(b) in gross if created in a person who held no property that benefited from the servitude, or if it serves a purpose that would be more useful to the original beneficiary than it would be to a successor to an interest in property held by the original beneficiary at the time the servitude was created[.]

*Restatement (Third) Property* (Servitudes) § 4.1 (2000).

██ [¶ 23] This Court has recognized a strong preference to construe an easement as appurtenant rather than in gross. *Baker v. Pike,* 2002 WY 34, ¶ 12, 41 P.3d 537, ¶ 12 (Wyo.2002). "When construing an easement, we seek to determine the intent of the parties to the easement ... and begin by attempting to glean the meaning of the easement from its language." *R.C.R., Inc. v. Rainbow Canyon, Inc.,* 978 P.2d 581, 586 (Wyo.1999); *See also Restatement (Third) Property* (Servitudes) § 4.1 (2000). If the language of the easement is clear and unambiguous, we interpret the easement as a matter of law, without resorting to the. use of extrinsic evidence to determine the parties' intent. *R.C.R.,* 978 P.2d at 586. If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the

parties' intent. *Hasvold,* ¶ 13; *R.C.R., Inc.,* 978 P.2d at 586; *Edgcomb v. Lower Valley Power and Light, Inc.,* 922 P.2d 850, 855 (Wyo.1996). We conclude the language of the 1978 easement is clear and unambiguous. However, we do not arrive at that conclusion in a vacuum. To determine the intent of the parties, the context in which the easement was drafted must be considered.

> The language of a contract is to be construed within the context in which it was written. In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract. The purpose of examining the context within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made. The context cannot be invoked to contradict the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties.

*Snow v. Duxstad,* 23 Wyo. 82, 147 P. 174 (1915).

[¶ 24] We do not purport to change or contradict the clear meaning of the language used in the 1978 easement. Taking into account, however, the surrounding circumstances of the 1978 Warranty Deed, such as when the Soests sold which parcels of land, and when each easement was granted, confirms the parties clearly intended the 1978 easement to be appurtenant. The 1978 Warranty Deed reserving the easement provides for a reservation "unto themselves [the Soests], their heirs, successors, and assigns, an easement *for roadway purposes over and across* the above-described property...." By 1978, the Soests started selling parcels of their land which were contiguous to the only public access to the area, while retaining other lands which required such access. Access through Segment One and the Squaw Creek Draw 40 had been granted with the 1972 easement. Without a similar right of way through the Reardon 40, however, access from the Game Creek Road to the Hay-

fields ends at the Squaw Creek Draw 40. Looking at the four corners of the document in the context in which it was drafted compels the conclusion that the grantor of the easement intended it to be appurtenant to the Hayfields. The appellants' own brief cites a Colorado case supporting this very result. "When an easement is created by a grant or reservation in a deed, the determination of whether the easement is appurtenant to a certain parcel of property or personal to a certain individual depends upon the intention of the parties as ascertained by reading the words of the deed in light of the attendant circumstances." *Westland Nursing Home, Inc. v. Benson,* 33 Colo.App. 245, 517 P.2d 862 (1974). We agree.

[¶ 25] The present case has all of the earmarks of an easement appurtenant. To identify easements appurtenant, this Court established certain "badges" of an appurtenance which include: (1) the easement was created to benefit a specific tract of land; (2) the grant was for a perpetual right-of-way for ingress and egress; (3) the grantee has the right to inspect and maintain the easement; (4) the right is not limited to the possessor personally; (5) the grant expressly extends the right to the grantees, their heirs, executors, administrators, successors, assigns and legal representatives; and (6) the easement document does not contain any limitations on the transferability of the easement to future transfers of both the dominant and servient estates. *Hasvold,* ¶ 21.

[¶ 26] The 1978 easement language satisfies most of those badges. First, the only purpose of the easement was to assure the grantors access to their retained lands. Second, the grant was perpetual "... for roadway purposes ... said easement being a strip of land sixty (60) feet in width whose center line is the centerline of that presently existing graded road traversing the above described property." Third, the right is not limited only to the possessor of the land and the easement expressly states the reservation is not only for the original landowners, but for their "heirs, successors, and assigns." Fourth, the easement contains no limits on the transferability of the easement to future dominant and servient estate owners.

[¶ 27] The decisions of other courts support this interpretation. For instance, the Utah Supreme Court considered a case similar in facts to the instant one. The issue in *Ernst v. Allen* was stated as follows: "Can the owner in fee of a parcel of land convey a part thereof and reserve from the part conveyed a right of way for herself, her heirs and assigns, over a strip contiguous to that retained by herself, unless the conveyance describes the land so retained by the grantor?" *Ernst v. Allen,* 55 Utah 272, 184 P. 827, 829 (1919). The *Ernst* court discussed the differences between appurtenant easements and easements in gross and noted that when the original landowner granted the easement, she still owned other lands upon which she was residing, "land contiguous to the right of way and dependent upon it as a means of ingress and egress to and from the back portion of her premises." *Id.* at 830. The Utah court concluded:

> It seems to us that this matter is too plain for controversy. The right of way in question, viewed in light of the surrounding circumstances, has all the earmarks of an easement appurtenant, and unless, as contended by appellant, it was necessary in the deed to describe the dominant tenement or land to which the right of way was appurtenant, the judgment should be affirmed as far as the right of way is concerned.

*Id.* Similarly, a New Mexico court stated:

> In construing a grant, however, a court must consider the circumstances surrounding it. "If the granting instrument does not specify whether the easement is appurtenant or in gross, the court decides from the surrounding circumstances, but generally begins with the presumption that it is appurtenant." E. Rabin, *Fundamentals of*

*Real Property Law* 434 (2d ed.1982). *See* Restatement of Property § 453 (1944); 28 C.J.S. *Easements* 4 (1941). *See also Siferd v. Stambor,* 5 Ohio App.2d 79, 214 N.E.2d 106 (1966) (whether easement is appurtenant must be determined from language used in deed, the surrounding circumstances at the time the right was created, and the intention of the parties at the time the deed was executed); *Ernst v. Allen,* 55 Utah 272, 184 P. 827 (1919) (an instrument attempting to create an easement should be read in light of surrounding circumstances, the situation of the parties and property involved; if the grant refers to no land to which the easement can be appurtenant, but such land in fact exists, that fact may be established to give effect to the words used).

*Luevano v. Group One,* 108 N.M. 774, 779 P.2d 552, 555 (1989).

[¶ 28] The only support the appellants offer in asserting that the 1978 easement is in gross is that the language of the 1978 Warranty Deed does not specifically describe a benefited or dominant parcel. However, they provide no authority that suggests an easement must do so or be deemed in gross. Instead, they hastily label the easement as *in gross,* and then proceed to argue whether *in gross* easements are assignable or not. That argument is misguided because the easement cannot be construed as *in gross* based on the clear language and the context within which it was written.

[¶ 29] We hold the 1978 easement was created for the benefit of the original landowners and their successors and, therefore, is appurtenant to the Hayfields property.

[¶ 30] Affirmed.

# APPENDIX

North to Jackson

Game Creek Road

segment one

(34)

(35)

(36)

quaw Creek Draw 40

Reardon 40

T40N
T 39 N

R 116 W.

National Forest
Service Land

(2)

1.

National Forest
Service Land

(3)

Highway 189

(12)