# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 6

OCTOBER TERM, A.D. 2023

January 16, 2024

TONY R. TESTOLIN and TIM
KARLBERG,

Appellants
(Defendants),

v.                                                          S-23-0132

THIRTY-ONE BAR RANCH
COMPANY, a Wyoming corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Platte County*
*The Honorable Michael K. Davis (Retired Justice), Judge*

*Representing Appellants:*
　　*Brandon L. Jensen and Rachael L. Buzanowski, Budd-Falen Law Offices, LLC, Cheyenne, Wyoming. Argument by Mr. Jensen.*

*Representing Appellee:*
　　*M. Gregory Weisz, Pence and MacMillan LLC, Cheyenne, Wyoming.*

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Thirty-One Bar Ranch Company (Thirty-One Bar) sued Tony R. Testolin and Tim Karlberg (collectively Defendants) over an access easement Defendants claimed across a portion of Thirty-One Bar's property. Thirty-One Bar challenged the validity of the easement and the way it was being used. The district court upheld the validity of Defendants' easement but restricted how they could use it. Defendants appeal the ruling restricting their use of the easement. We reverse.

## *ISSUES*

[¶2]    The parties each presented a single issue for review, but we conclude the appeal presents two questions:

1. Did the district court err in interpreting the access easement to restrict Defendants from using it to allow a commercial hunting outfitter access to their property?

2. Did the district court err in finding that use of the easement to allow a commercial hunting outfitter access to Defendants' property overburdened Thirty-One Bar's property?

## *FACTS*

[¶3]    Thirty-One Bar owns approximately 5,500 acres in Platte County known as the Brush Creek Property. Adjacent to the Brush Creek Property is a 2,360-acre property known as the Richeau Property. Historically, access to both properties was by a road known as Brush Creek Road. Brush Creek Road partially traverses the Brush Creek Property in a north-south direction and is initially a county road. At the end of the county road, it becomes a private road with a 2.47-mile-long branch of it leading to the Richeau Property.

[¶4]    In 1972, Nedalyn Wilhelm, whose family had operated Thirty-One Bar for years, married Tony D. Testolin (Tony Senior).[1] From 1972 until 1996, Thirty-One Bar had four shareholders; Nedalyn Testolin and Tony Senior jointly owned 94.54% of the outstanding shares, and Nedalyn's daughters from a prior marriage, Lael Good and Conilee Swantek, owned the remainder.

---

[1] Tony D. Testolin's son is Tony R. Testolin. To avoid confusion, the parties and district court referred to father and son as Tony Senior and Tony Junior, and they referred to Nedalyn by her first name. We will do likewise.

1

[¶5]    In 1996, Tony Senior purchased the Richeau Property. On October 24, 1997, he deeded the property to himself and Nedalyn as tenants in common, and on that same day, the two transferred the property from themselves to the Tony D. and Nedalyn D. Family Trust (Family Trust). They also transferred their shares in Thirty-One Bar to the Family Trust.

[¶6]    In 1998, Tony Senior and Nedalyn executed a private road easement. It purported to be a grant from Thirty-One Bar, Tony Senior, and Nedalyn to Tony Senior, and it granted an easement across the Brush Creek Property to the Richeau Property. The easement allowed access across the 2.47-mile portion of Brush Creek Road that branches off to the Richeau Property after the county road ends. At that time, the Brush Creek Property and Richeau Property were operated as a common agricultural operation, and the easement indicated it was reciprocal.

[¶7]    In 2004, the Family Trust sold forty acres of the Richeau Property to Tim Karlberg. Mr. Karlberg was married to Tony Senior's daughter Deborah until she passed away, and the Family Trust sold him the property, at least in part, to have him closer to Tony Senior and Nedalyn as they aged and required more assistance. When Mr. Karlberg asked about access, Nedalyn provided him with a copy of the private road easement, which he also found recorded. Over the course of eleven months in 2004, Mr. Karlberg built a home on the Richeau Property, and his contractors used the easement road for access. He continued to use the easement road for access after his home was complete.

[¶8]    In August 2020, Tony Senior and Nedalyn entered into an agreement to split their assets to provide for distribution to their respective children on their deaths. By warranty deed, the Family Trust conveyed the Richeau Property to Tony Senior, and by quitclaim deed, Nedalyn conveyed any interest she might have in the property to him. Tony Senior in turn transferred to Nedalyn the shares in Thirty-One Bar allocated to him under the Family Trust and quitclaimed any interest he had in the Brush Creek Property.

[¶9]    In the fall of 2020, Tony Senior entered into an agreement with a hunting outfitter to allow it to guide on the Richeau Property, using the easement road as access. Thirty-One Bar objected to Tony Senior's use of the road for this purpose and installed locked gates to prevent access. On September 29, 2020, Nedalyn's daughter, Lael Good, sent an email to Tony Senior, Tony Junior, and Mr. Karlberg with an attached document from the Thirty-One Bar Board of Directors (Nedalyn, Conilee Swantek, and Lael Good). The document concerned use of Brush Creek Road and stated:

> At this time we are giving you notice that the so-called easement is not a valid easement and is not the basis for you or anyone else to get to the Richeau property.

2

This document provides notice of our verbal permission for you and your immediate family members to use the road. You are the ONLY individuals traveling to the Richeau who are able to use the road until further notice.

Below are the stipulations.

- We will be locking the entrance at the overhead and will provide you with three keys, one for Tony Sr.[,] one for Tony Jr[.,] and one for Tim Karlberg. These keys are not to be used or given to anyone but the three of you. They can't be replicated and anyone else using them will be cited for trespassing.

- We have informed Table Mountain Outfitters that they will be required to use the easement they currently have through the Grant Ranch to get to the Richeau until these issues have been resolved.

- A future specific easement can be negotiated but until one has been agreed upon this notice is to let you know that only you have permission to use the road.

- Should you have any questions, please contact our attorney who is CCed on this notice and if we discover you have tried to go around the agreements made by the current Thirty One Bar Ranch Directors and go to Nedalyn for permission we will consider that a breach of the above stipulations and remove our verbal permission.

[¶10]  The parties continued to have disputes over use of the private road easement and Thirty-One Bar's blocking of the easement. In January 2021, Nedalyn died, and in September 2021, Thirty-One Bar filed a complaint for declaratory judgment against Tony Senior and Mr. Karlberg.[2] It sought a declaration that the road easement was not valid, or if valid, that Defendants exceeded the permissible use of the easement. It also asserted claims for quiet title and damages for a cable and lock that it alleged Tony Senior or his agent cut. Defendants counterclaimed for a declaratory judgment to quiet title to the

---

[2] Tony Senior died while the litigation was pending, and the Richeau Property, less the forty acres Mr. Karlberg already owned, was divided between Tony Junior and Mr. Karlberg, with Tony Junior receiving 1200 acres, and Mr. Karlberg 1160 additional acres. Tony Junior was then substituted as a defendant.

private road easement and for a permanent injunction enjoining Thirty-One Bar from interfering with their use of the easement. In the alternative, they sought a declaration that they hold implied easements, for establishment of a private road, or for reformation of the easement to correct a scrivener's error.

[¶11] Following a bench trial, the district court ruled that Thirty-One Bar's challenge to the validity of the private road easement was barred by several statutes of limitations, and it upheld the validity of the easement and quieted title in Defendants. It concluded the easement benefited the Richeau property, and that it was appurtenant to and ran with the land. The court found that Thirty-One Bar had not proved its claim for damages.

[¶12] The district court found Defendants' claim for reformation of the easement barred by laches, and, having upheld the validity of the private road easement, it did not address their claims for an implied easement or statutory private road. The court ruled that Thirty-One Bar may retain the gates between its property and the Richeau Property, but it granted Defendants' request for an injunction enjoining Thirty-One Bar from locking the gate unless the parties agreed in writing.

[¶13] Most relevant to this appeal, the district court ruled in Thirty-One Bar's favor on its claim that use of the easement to allow a commercial hunting outfitter access to the Richeau Property exceeded the scope of the easement. In so ruling, the court found that: the road was historically used for agricultural and residential purposes; Nedalyn, the Family Trust, and Tony Senior were careful to limit and monitor access to the properties for hunting purposes; and they received no monetary benefit from allowing hunting by family and friends. The court also made findings concerning the negative impact use of the easement for outfitter access would have on Thirty-One Bar's property, which we will detail later in the opinion.

[¶14] Thirty-One Bar did not appeal any of the rulings adverse to it. Defendants timely appealed the district court's ruling that allowing hunting outfitters access to the Richeau Property was an impermissible use of the easement.

### STANDARD OF REVIEW

[¶15] When reviewing a district court's decision after a bench trial, we use the following standard of review:

> The factual findings of a judge are not entitled to the limited review afforded a jury verdict. While the findings are presumptively correct, the appellate court may examine all of the properly admissible evidence in the record. Due regard is given to the opportunity of the trial judge to assess the credibility of the witnesses, and our review does not entail re-

4

weighing disputed evidence. Findings of fact will not be set aside unless they are clearly erroneous. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In considering a trial court's factual findings, we assume that the evidence of the prevailing party below is true and give that party every reasonable inference that can fairly and reasonably be drawn from it. We do not substitute ourselves for the trial court as a finder of facts; instead, we defer to those findings unless they are unsupported by the record or erroneous as a matter of law. The district court's conclusions of law are reviewed *de novo*.

*Lyman v. Childs*, 2023 WY 16, ¶ 10, 524 P.3d 744, 751 (Wyo. 2023) (quoting *Fuger v. Wagoner*, 2020 WY 154, ¶ 8, 478 P.3d 176, 181 (Wyo. 2020)). Interpretation of an easement presents a question of law that we interpret de novo. *Levy v. Aspen S, LLC*, 2021 WY 46, ¶ 7, 483 P.3d 852, 855 (Wyo. 2021).

## *DISCUSSION*

## I.     *The district court erred in interpreting the private road easement to restrict Defendants from using it to allow a commercial hunting outfitter access to the Richeau Property.*

[¶16]  "An easement is a nonpossessory interest in land that entitles the easement holder to a right of limited use in another's property." *Upper Wagon Box, LLC v. Box Hanging Three Ranch Ltd. P'ship*, 2022 WY 155, ¶ 11, 521 P.3d 551, 558 (Wyo. 2022) (citing *BNSF Ry. Co. v. Box Creek Min. Ltd. P'ship*, 2018 WY 67, ¶ 18, 420 P.3d 161, 166 (Wyo. 2018)). When interpreting easements, we use the same rules that govern contract interpretation. *Berthel Land & Livestock v. Rockies Express Pipeline LLC*, 2012 WY 52, ¶ 12, 275 P.3d 423, 429 (Wyo. 2012).

When construing an easement, we seek to determine the intent of the parties to the easement and begin by attempting to glean the meaning of the easement from its language. If the language of the easement is clear and unambiguous, we interpret the easement as a matter of law, without resorting to the use of extrinsic evidence to determine the parties' intent. If, however, the language is ambiguous, then the court looks to extrinsic evidence to ascertain the parties' intent.

5

*Gayhart, Tr. of the Tiphany L. Gayhart Living Tr. dated October 1, 2008 v. Corsi*, 2020 WY 58, ¶ 15, 462 P.3d 904, 909 (Wyo. 2020) (cleaned up) (quoting *Pokorny v. Salas*, 2003 WY 159, ¶ 23, 81 P.3d 171, 177-78 (Wyo. 2003)).

[¶17] In interpreting easements, we have emphasized our reliance on an easement's plain language. *R.C.R., Inc. v. Deline*, 2008 WY 96, ¶ 23, 190 P.3d 140, 155 (Wyo. 2008) ("[W]ith respect to the scope of the easement created, courts stress the primary control exercised by the language of the creating conveyance.") (quoting 4 *Powell on Real Property,* § 34.12 (Michael Allen Wolf ed., LexisNexis Matthew Bender 2007-2008)); *see also Edgcomb v. Lower Valley Power & Light, Inc.*, 922 P.2d 850, 855 (Wyo. 1996) ("When interpreting express easements, courts usually start with the proposition that the terms of the written instrument control.") (quoting Jon W. Bruce & James W. Ely, Jr., *The Law of Easements & Licenses in Land* ¶ 7.02 (Rev. ed. 1995)). We have also said:

> The language of a contract is to be construed within the context in which it was written. In so doing, the court may look to the surrounding circumstances, the subject matter and the purpose of the contract. The purpose of examining the context within which the contract was drawn, however, is limited to ascertaining the intent of the parties at the time the agreement was made. ***The context cannot be invoked to contradict the clear meaning of the language used, and those extraneous circumstances do not justify a court in proceeding to insert therein a provision other than or different from that which the language used clearly indicates, and thereby, in effect, make a contract for the parties***.

*Upper Wagon Box*, 2022 WY 155, ¶ 23, 521 P.3d at 560 (emphasis added) (quoting *Lozier v. Blattland Invs., LLC*, 2004 WY 132, ¶ 9, 100 P.3d 380, 383-84 (Wyo. 2004)).

[¶18] The easement in this case states that it is "an easement for a private road," and otherwise contains no language defining or restricting the easement's use. The district court did not find an ambiguity in the easement, and the parties have not contended otherwise.[3] Nonetheless, the district court concluded that because the easement did not express a purpose, had originally been used for agricultural and residential purposes only,

---

[3] Thirty-One Bar contends there were numerous defects in the private road easement that justified the district court's consideration of historical context in interpreting the easement. The defects Thirty-One Bar cites concern the authority of the parties to execute the easement. These defects raised questions concerning the validity of the easement but provide no insight into the parties' intent to restrict future use of the easement. Because the court ruled against Thirty-One Bar on its challenge to the easement's validity, and Thirty-One Bar has not appealed that ruling, we have no need to address the alleged defects.

and the parties had historically limited and monitored access to the Brush Creek and Richeau properties for hunting purposes, the use of the easement to allow an outfitter access to the Richeau Property exceeded the scope of the easement. We conclude the court misused context to add restrictions to the easement.

[¶19] We have observed that silence in an easement may not be construed as a restriction or a limitation. *Upper Wagon Box*, 2022 WY 155, ¶ 27, 521 P.3d at 561. Along these same lines, we have said:

> Unless the language of the creating instrument or the attending circumstances at the time of the grant indicate a contrary intent, the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation, either with respect to the permissible uses of the easement or with respect to the permissible uses which may be made of the servient land by the servient owner. In the absence of a contrary intent both the uses of the dominant and servient owners are subject to adjustment consistent with the normal development of their respective lands.

*Edgcomb*, 922 P.2d at 857-58 (cleaned up) (quoting *Jones v. Edwards*, 347 P.2d 846, 848 (Or. 1959)); *see Bard Ranch Co. v. Weber*, 557 P.2d 722, 731 (Wyo. 1976); *see also State v. Homar*, 798 P.2d 824, 826 (Wyo. 1990) ("The manner in which the easement is used does not become frozen at the time of grant."); *Lozier*, 2004 WY 132, ¶ 13, 100 P.3d at 385 (that property was originally used as cattle operation and guest ranch did not preclude use of access easement after subdivision where nothing in easement or contextual evidence limited use); *Zubli v. Cmty. Mainstreaming Assocs., Inc.*, 423 N.Y.S.2d 982, 990 (N.Y. Sup. Ct. 1979), *aff'd*, 425 N.Y.S.2d 263 (N.Y. App. Div. 1980) (mem.), *modified sub nom.*, *Zubli v. Cmty. Mainstreaming Assn., Inc.*, 410 N.E.2d 746 (N.Y. 1980) (mem.) (where easement omitted reference to who may use it or for what purpose, grantee entitled to use if for ingress and egress regardless of whether dominant estate remains a single-family dwelling or becomes a community residential facility); *Inter Cmty. Mem'l Hosp. Bldg. Fund, Inc. v. Brown*, 168 N.Y.S.2d 535, 537-38 (N.Y. Sup. Ct. 1957) (where easement contained no restrictions, right-of-way originally used as farm crossing could be used for ingress to and egress from hospital built on dominant estate).

[¶20] The rule cited above notes that a court may consider "the attending circumstances at the time of the grant" to find an intent to limit the scope of an easement. We also, however, have the rule that an easement's manner of use is not frozen in time, nor is the use of the dominant or servient estate. It follows then that to qualify as evidence of an intent to restrict future uses, "the attending circumstances" a court looks to must be something more than just evidence of how the easement and dominant and servient

7

estates were used at the time of the grant. Where the easement contains no restrictions on permissible uses, there must be evidence not only of the use at the time of the grant, but also evidence that shows the parties intended no other use of the easement.

[¶21]   Our decision in *Lozier* is illustrative. In *Lozier*, the dominant estate was used as a cattle operation and guest ranch when the access easement was granted. 2004 WY 132, ¶ 13, 100 P.3d at 385. The owner of the dominant estate later subdivided the property into lots for sale to third parties. *Id.*, at ¶¶ 12-13, 100 P.3d at 384-85. This of course meant that individuals unrelated to Lozier or his invitees would be using the easement, which led to the dispute. *Id.* Despite the historical use of the dominant estate and the easement, we found "no contextual evidence that the easement was drafted to limit future access." *Id.*, ¶ 13, 100 P.3d at 385. If evidence of how the dominant estate and easement were used at the time of the grant was sufficient to show an intent to restrict future uses of the easement, the result in *Lozier* would have been different.

[¶22]   Likewise in this case, the record is devoid of evidence that would show an intent to limit future use of the easement. In 1998, when the easement was granted, the Brush Creek and Richeau properties were operated as a common agricultural operation, and the easement was used in support of that operation. But there is simply no evidence that Nedalyn and Tony Senior intended to restrict other uses of the easement. Indeed, other uses were later made of the easement. In 2004, when Mr. Karlberg bought forty acres of the Richeau Property, his contractors used the easement to access his property to construct his home. Thereafter, Mr. Karlberg used the easement to access his home.

[¶23]   We thus conclude the district court erred in finding the easement was limited and restricted Defendants from using it to allow hunting outfitters to access the Richeau Property. The remaining question is whether the court erred in finding that the use overburdened Thirty-One Bar's property.

**II.     The district court erred in finding that use of the easement to allow a commercial outfitter access to the Richeau Property overburdened Thirty-One Bar's property.**

[¶24]   The "manner, frequency, and intensity" of an easement's use may change over time. *White v. Allen*, 2003 WY 39, ¶ 16, n.2, 65 P.3d 395, 400, n.2 (Wyo. 2003) (quoting Restatement (Third) of Property (Servitudes) § 4.10 (2000)); *see also Mueller v. Hoblyn*, 887 P.2d 500, 505 (Wyo. 1994) (distinguishing additional burden from an increase in degree of easement's use). In *Mueller*, 887 P.2d at 505, this Court cited with favor a Colorado case, which explained:

> When a right of way is granted over land, the servient estate, for the benefit of other land, the dominant estate, and the instrument creating the easement does not limit the use to be

made thereof, it may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted.

*Westland Nursing Home, Inc. v. Benson*, 517 P.2d 862, 867 (Colo. App. 1974) (quoting *Cushmann Va. Corp. v. Barnes*, 129 S.E.2d 633, 639 (Va. 1963)); *see also Weeks v. Wolf Creek Indus., Inc.*, 941 So.2d 263, 270 (Ala. 2006) ("A right-of-way created by conveyance in 'general terms and without any restrictions on its use' is to be 'construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant.'") (quoting *Birdsey v. Kosienski*, 101 A.2d 274, 278 (Conn. 1953)); *Shooting Point, LLC v. Wescoat*, 576 S.E.2d 497, 502-03 (Va. 2003).

[¶25] This rule is subject to the qualification that an owner of an easement may not overburden the servient estate. "A principle which underlies the use of all easements is that the owner of the easement cannot materially increase the burden of the servient estate or impose thereon a new and additional burden." *Bard Ranch*, 557 P.2d at 731 (citation omitted). Whether a use overburdens the servient estate is a question of fact. *Goodman v. Voss*, 2011 WY 33, ¶ 37, 248 P.3d 1120, 1130 (Wyo. 2011), *superseded on other grounds by statute as recognized in Whaley v. Flitner Ltd. P'ship*, 2017 WY 59, 395 P.3d 653 (Wyo. 2017). The party asserting an easement holder has overburdened the servient estate bears the burden of proving that claim. *Shooting Point*, 576 S.E.2d at 502 ("A party alleging that a particular use of an easement is unreasonably burdensome has the burden of proving his allegation."); *Nicklaus v. Serosky*, No. 21818-6-II, 1998 WL 138688, at *3 (Wash. Ct. App. 1998) (unpublished opinion) ("The servient owner has the burden of proving misuse of the easement.").

[¶26] The district court found that "Defendants certainly have the right to allow hunting on their property, and to obtain a commercial benefit from doing so." It thus acknowledged that Defendants' use of the dominant estate was reasonable. The only question then is whether the court's findings support its conclusion that use of the easement to facilitate this reasonable use overburdened the servient estate.[4]

[¶27] In support of its conclusion, the court made several findings. It first found:

> Leasing to [the outfitter] effectively gave the outfitter control over the identity and number of persons who used the road and when it was used, and thereby wrested that control from the dominant and servient estates. This had not been the

---

[4] The district court did not characterize its ruling as one of overburdening; however, its findings were directed at the effect of the use on Thirty-One Bar and are thus of that nature, as opposed to an interpretation of the easement.

9

case before, at least to this extent. Although there is presumably a licensed guide with any party using the road, this is not necessarily the kind of close supervision the Thirty-One Bar and the Testolin family historically exercised over friends and family using the easement to hunt on either the Thirty-One Bar or Richeau property.

[¶28]  At the outset, we note the agreement between Tony Senior or Tony Junior and the outfitter is not in the record, and no testimony was elicited concerning the terms of their arrangement. We therefore do not know the level of control the outfitter had over how many persons used the road or when they used it. In any event, the finding that the outfitter's access wrested control from the servient estate over who used the easement presumes Thirty-One Bar had a right to control who Defendants invited to their property. The easement did not give the servient estate that control or restrict who Defendants could invite, and the rule is that "unless expressly restricted, the use of an easement appurtenant is not limited to the owners of the dominant estate, but also inures to the benefit of their tenants, servants, agents, or employees in conducting their business, as well as social and business invitees." *Weeks*, 941 So.2d at 272 (cleaned up); *see also* 28A C.J.S. *Easements* § 221 (Aug. 2023 update) ("Although a private right-of-way may not be used by the general public, it may be used by the owner of the way and the owner's family, tenants, servants, and guests, as well as by persons transacting business with her, in the absence of a special agreement to the contrary.").

[¶29]  In *Nicklaus*, a property owner challenged his neighbor's use of an easement over his property and claimed only the neighbor himself could use the easement, not his invitees. 1998 WL 138688 at *1. He cited privacy concerns and argued he should be able to restrict access to reduce the burden on his servient estate. *Id.* at *3. The court found the easement granted unrestricted access and thus rejected the claim. *Id.*

> The Seroskys worried about a young grandchild who sometimes played outside, and they resented the fact that Nicklaus and his visitors could peer into their house while driving past, but these irritations do not amount to an unreasonable burden where the easement allows Nicklaus unrestricted use.

*Id.*

[¶30]  In this case, there was no testimony, or even allegation, that the outfitter or its hunters used the easement for anything other than access to the Richeau Property. While we can appreciate Thirty-One Bar's desire to closely supervise hunting on its own property, we fail to see how the mere passage of hunters over the 2.47-mile-long easement implicates the same concerns. We agree with the reasoning of the Washington

appellate court in *Nicklaus* that these concerns do not rise to the level of a material burden where the easement allows Defendants unrestricted use of the easement.

[¶31]  The district court next found:

> Presumably, each hunter and guide traversing the property, other than perhaps during archery big game season, possessed a firearm, and allowing this kind of access provides no assurance as to the hunter's proficiency in safely handling firearms as they pass through the Thirty-One Bar property.

[¶32]  We disagree that this consideration lends itself to a finding of an overburdening. First, Brush Creek Road is a county road where it enters Thirty-One Bar's property and remains so until it reaches Defendants' 2.47-mile-long easement. Anyone could enter the property with a firearm in their vehicle, and there is no way for Thirty-One Bar to control that. And again, there have been no allegations that the outfitter and its hunters have done anything other than drive the short distance over the easement. We cannot conclude that a speculative concern with the proficiency of these individuals' firearms handling is a material burden on the servient estate.

[¶33]  The district court further found the outfitter "used the easement before daylight and around dark. Lights on vehicles using the easement were visible from the Thirty-One Bar headquarters and would be disturbing to those on that property since they would have no way to know who was using the easement." It also cited a concern that "[a]llowing this use of the easement would devalue the Thirty-One Bar property due to a loss of control of who may use the road by permission or valid easement." These are both concerns that again presume Thirty-One Bar has a right to control or restrict who Defendants invite onto their property. As we discussed above, the easement allows unrestricted access and does not give Thirty-One Bar that right. To the extent the unrestricted nature of the easement contributes to a diminution in the value of Thirty-One Bar's property, that is a product of the way the easement was drawn, not the Defendants' use of it.

[¶34]  The last finding we address is the district court's observation that Defendants failed to show that the outfitter it had an agreement with, or any other outfitter, did not have, or could not obtain, access to the Richeau Property other than by way of the easement. The court's focus was on whether use of the easement for outfitter access was necessary for the development of Defendants' property. However, as discussed above, Defendants were entitled to use the easement for any reasonable use of the dominant estate provided that use did not materially increase the burden on the servient estate. Thirty-One Bar did not meet its burden of proving that use of the easement for outfitter access overburdened their property, and Defendants therefore were not required to use an alternative route for the outfitter's access. *See Sander, Trs. of Barry J. Sander & Goldye*

11

*Wolf Revocable Living Tr. v. Nicholson*, 473 P.3d 1113, 1119-20 (Or. Ct. App. 2020) (easement may still be used for reasonable purpose even if alternative route exists); *Nicklaus*, 1998 WL 138688 at \*3 (upholding denial of request that easement holder be ordered to use available alternative access where no overburdening found).

[¶35] Because Thirty-One Bar did not meet its burden of proving that use of the easement to allow outfitter access to the Richeau Property materially increased the burden on Thirty-One Bar's property, the district court committed clear error in declaring the use impermissible.

## *CONCLUSION*

[¶36] By its plain terms, the private road easement did not restrict Defendants from using the easement to allow a hunting outfitter access to their property, and the district court erred in relying on the property's historical uses to find such a restriction. The district court further committed clear error when it found that the use impermissibly burdened the servient estate.

[¶37] Reversed.